856 F.2d 1317
 John R. SABLAN; Angeline F. Sablan, Plaintiffs-Appellees,
v.
DEPARTMENT OF FINANCE OF the COMMONWEALTH OF the NORTHERN
MARIANA ISLANDS; Rex Palacios, Director of Department of
Finance of the Commonwealth of the Northern Mariana Islands
in his official capacity; Rex Palacios, in his individual
capacity; Norbert Torres, in his official capacity as
Manager, Collection Remittance of Department of Finance of
the Commonwealth of the Northern Mariana Islands; Norbert
Torres, in his individual capacity; Department of Public
Works of Commonwealth of the Northern Mariana Islands; John
Pangelinan, Director of Department of Public Works, in his
official capacity; John Pangelinan, in his individual
capacity, Defendants-Appellants.
 No. 87-2500.
 United States Court of Appeals,
Ninth Circuit.
 Submitted April 6, 1988*.
Decided Sept. 2, 1988.
 
 R. Keith Partlow, Asst. Atty. Gen., Com. of the Northern Mariana Islands, Saipan, CM, for defendants-appellants.
 David A. Wiseman, Saipan, CM, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of the Northern Mariana Islands.
 Before WALLACE, REINHARDT and NOONAN, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 The owner and operator of an office building (Sablan) located on Saipan brought this action under 42 U.S.C. Sec. 1983 against the Department of Finance and Department of Public Works of the Commonwealth of the Northern Mariana Islands (Commonwealth) and various officials of these two agencies in their individual and official capacities (collectively government) for terminating his electric utility service without prior notice and a hearing. Although the parties eventually stipulated to the dismissal of the lawsuit, upon a motion by Sablan for attorney's fees, the district court concluded that Sablan was a "prevailing party" within the meaning of 42 U.S.C. Sec. 1988 and, accordingly, awarded attorney's fees under that provision. On appeal, the government challenges not only the merits of the district court's "prevailing party" determination, but also the district court's jurisdiction over this action and its discretion to award attorney's fees without first allowing discovery and conducting an evidentiary hearing. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, as made applicable to the Commonwealth through 48 U.S.C. Sec. 1694c(a), and we affirm.
 
 
 2
 * Sablan's office building received its electricity from a public utility owned and operated by the Commonwealth. After a billing dispute arose, in which Sablan protested the reasonableness and consistency of his utility bills, the electricity to the office building was disconnected. Subsequently, Sablan filed a complaint under 42 U.S.C. Sec. 1983 seeking temporary and permanent injunctive relief, money damages, and attorney's fees pursuant to 42 U.S.C. Sec. 1988. Among other things, Sablan alleged that the government, in violation of the due process clause, terminated the electrical power to Sablan's place of business without prior notice or an opportunity to be heard.
 
 
 3
 Sablan also moved ex parte for a temporary restraining order requiring the government to restore and maintain his electricity pending a hearing on his motion for a preliminary injunction. The district court entered the temporary restraining order and set a hearing date for the preliminary injunction. No hearing was necessary because the parties entered into a court-approved stipulation that the electrical power supply to Sablan's office building "will not be individually and intentionally curtailed pending further order of this court."
 
 
 4
 Shortly thereafter, the government filed an answer to Sablan's complaint, asserting a defense of sovereign immunity, denying the significant factual allegations in the complaint, and counterclaiming for allegedly past due utility bills. Discovery proceeded for approximately two months before the parties decided to settle the case by stipulating to the dismissal, with prejudice, of all claims and counterclaims. The stipulated dismissal expressly left open the question of Sablan's entitlement to attorney's fees pursuant to 42 U.S.C. Sec. 1988 and provided that Sablan reserves "the right to move for an award on [sic] fees with in [sic] reasonable time fom [sic] the date of filing of this stipulation."
 
 
 5
 Pursuant to that stipulation, Sablan moved for attorney's fees pursuant to section 1988 on the ground that he was the "prevailing party" in this action. Along with his motion, he submitted a supporting memorandum of points and authorities, which included as an attached exhibit an itemized bill for legal services performed in connection with the lawsuit. The government moved to continue the scheduled hearing date on Sablan's motion in order to allow the government time "to engage in discovery or analysis regarding the request for fees." On that same day, the government filed a set of interrogatories and a request to produce documents relating to Sablan's fee application. The request for a continuance was denied.
 
 
 6
 After argument at the originally scheduled hearing, the district court (1) rejected the government's contention that the court did not have jurisdiction to hear a case involving the Commonwealth, or its agencies and officers, (2) ruled that because Sablan had succeeded through his lawsuit in prompting the government to reform its former unconstitutional policy of terminating customers' electricity without prior notice and a hearing, he was a "prevailing party" for purposes of receiving an award of attorney's fees under section 1988, and (3) after reducing the requested amount by one-third, awarded the remainder as attorney's fees under section 1988. The government timely appeals the award of attorney's fees.
 
 
 7
 The law to be applied to this appeal is that of this circuit. Because the Ninth Circuit has been given jurisdiction over federal actions appealed from the District Court for the Commonwealth, it follows that Ninth Circuit law should govern the disposition of the federal statutory, procedural, and evidentiary issues raised on this appeal. See, e.g., Micronesian Telecommunications Corp. v. NLRB, 820 F.2d 1097, 1101-02 (9th Cir.1987) (applying Ninth Circuit interpretation of the National Labor Relations Act to federal labor law issues arising in the Commonwealth); Smith v. Pangilinan, 651 F.2d 1320, 1323-26 (9th Cir.1981) (applying Fed.R.Civ.P. 24 to motion to intervene in proceeding brought in District Court for the Commonwealth).
 
 II
 
 8
 The government first argues that sovereign immunity divested the district court of jurisdiction to entertain a section 1983 suit against officers and agencies of the Commonwealth. Both eleventh amendment and common law immunity are advanced as a bar to federal jurisdiction.
 
 
 9
 Our recent decision in Fleming v. Department of Public Safety, CNMI, 837 F.2d 401 (9th Cir.1988), however, conclusively decided this issue against the government. In Fleming, we stated that, while sharing "many attributes of statehood," the Commonwealth is nonetheless a person for purposes of being sued under section 1983 and that, like a local government, it "does not enjoy eleventh amendment immunity." Id. at 406 (footnote omitted). Further, we held that whatever common law sovereign immunity the Commonwealth might have otherwise possessed against suits in federal court arising under federal law was impliedly waived when the Commonwealth entered into the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America. Id. at 407.
 
 
 10
 Hence, the Department of Public Works and the Department of Finance, and their officers acting in their official capacities, cannot hide behind the shield of either eleventh amendment or common law sovereign immunity. See id. at 408. On appeal, the various government officials who are named in their individual capacity do not raise any claim of absolute or qualified immunity. We will therefore treat any potential claims of official immunity as waived.
 
 III
 
 11
 The government next assigns error on two procedural grounds. First, the government contends that the district court abused its discretion in denying a continuance to pursue discovery relating to Sablan's request for attorney's fees. Second, the government assails the district court for impermissibly making specific factual findings on the "prevailing party" issue.
 
 A.
 
 12
 The district court's decision to grant or deny a continuance will not be overturned except upon a showing of clear abuse of discretion. Rios-Berrios v. INS, 776 F.2d 859, 862 (9th Cir.1985). Here, a continuance was sought for the purposes of conducting discovery, and hence its denial was effectively a denial of discovery. Discovery requests, however, are similarly committed to the sound discretion of the trial court. Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed "except 'upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant.' " Butcher's Union Local No. 498 v. SDC Investment, Inc., 788 F.2d 535, 540 (9th Cir.1986), quoting Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 n. 1 (9th Cir.1977).
 
 
 13
 The government's discovery request, however, pertained solely to the amount of fees; it did not raise issues relating to Sablan's entitlement to fees as a "prevailing party." In the motion for a continuance, the government averred that it needed more time "to engage in discovery or analysis regarding the request for fees." The attached supporting affidavit by the Assistant Attorney General clarified that the purpose of the continuance was to permit the government "to engage in discovery as to the amount and reasonableness of Plaintiff's fee request." (Emphasis added.) But no suggestion was made that the government was even contesting Sablan's "prevailing party" status, much less that the government was seeking discovery on that specific issue.
 
 
 14
 The interrogatories to Sablan and request for documents related exclusively to the amount and reasonableness of attorney's fees. No information was requested that could reasonably have been calculated to provide facts germane to the "prevailing party" issue.
 
 
 15
 The day after the motion for continuance and the interrogatories and request for documents were filed, the government attempted for the first time to challenge Sablan's claim to "prevailing party" status in its opposition to Sablan's motion for attorney's fees. The opposing memorandum, however, did not mention that the government was requesting discovery on this issue.
 
 
 16
 On the basis of these pleadings filed by the government in the district court, we can only conclude that the government was limiting its discovery request exclusively to the amount of attorney's fees. The government did not communicate any desire to conduct discovery on matters relating to the determination of Sablan's "prevailing party" status to the district court with sufficient clarity to warrant the court's consideration.
 
 
 17
 Because the government does not challenge on appeal the reasonableness of the award of the attorney's fee, the government cannot object to the lack of discovery on that issue. On the "prevailing party" issue which the government does raise on appeal, no request for discovery was made. Thus, there can be no abuse of discretion.
 
 B.
 
 18
 The government also contends that the district court erred by making specific findings of fact relating to the "prevailing party" issue. Essentially, the government's complaint is that none of the five documents upon which the district court relied in its opinion "was ever introduced into evidence." Consequently, the government reasons, unless the district court conducted an evidentiary hearing, there was no "evidence" upon which it could have based its factual conclusions. In the alternative, the government suggests that these documents were inadmissible, but fails for the most part to state the specific grounds for its objections.
 
 1.
 
 19
 The government is not in a position to challenge the lack of a hearing because it did not request an evidentiary hearing on the "prevailing party" issue. The district judge was not required to hold an evidentiary hearing sua sponte. Like a trial, the purpose of an evidentiary hearing is to resolve disputed issues of fact, see United States v. Dicesare, 765 F.2d 890, 895-96 (9th Cir.), amended on other grounds, 777 F.2d 543 (9th Cir.1985), or to provide the district court with a sufficient factual basis for deciding an issue. See Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 838 (9th Cir.1982) (Moore ). Fee awards therefore need not be preceded by an evidentiary hearing if the record and supporting affidavits are sufficiently detailed to provide an adequate basis for calculating an award, see Shakey's Inc. v. Covalt, 704 F.2d 426, 435 (9th Cir.1983); Moore, 682 F.2d at 838; Manhart v. City of Los Angeles, Department of Water and Power, 652 F.2d 904, 908 (9th Cir.1981), vacated on other grounds, 461 U.S. 951, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983); American Constitutional Party v. Munro, 650 F.2d 184, 186 (9th Cir.1981) (Munro ); Williams v. Alioto, 625 F.2d 845, 849 (9th Cir.1980) (per curiam), cert. denied, 450 U.S. 1012, 101 S.Ct. 1723, 68 L.Ed.2d 213 (1981), and if the material facts necessary to calculate the award are not genuinely in dispute. See Blum v. Stenson, 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 1545 n. 5, 79 L.Ed.2d 891 (1984).
 
 
 20
 We see no reason why this rule should not apply with equal force when the issue is a party's entitlement to attorney's fees as a "prevailing party" as when the issue concerns only the amount of the fee award once eligibility for some award is established. As we will demonstrate in part IV, the exhibits submitted by Sablan in his motion for attorney's fees provided an ample basis for the district court to determine that he was a "prevailing party" within the meaning of section 1988. Moreover, the government failed to raise any disputed issues of fact before the district court regarding the "prevailing party" question. The government's opposition to Sablan's motion for attorney's fees neither objected to the attached documentary evidence nor offered a counterstatement on facts bearing on the "prevailing party" issue. Although the government made a number of conclusory legal allegations, it never specifically contested Sablan's factual allegations that its former procedures did not provide for pretermination notice and a hearing, much less offered any proof countering Sablan's evidence on this point.
 
 2.
 
 21
 Three of the documents that were considered by the district court were not among the exhibits accompanying Sablan's memorandum in support of its motion for attorney's fees. However, no objection was raised by the government when they were proffered. Thus, we review their consideration by the district court under a plain error standard, which requires us to consider whether the alleged error was highly prejudicial and whether the error affected the substantial rights of the government. United States v. Hutson, 843 F.2d 1232, 1238 (9th Cir.1988).
 
 
 22
 Clearly, if the complained of documents were admissible evidence, their consideration by the district court cannot be said to have been highly prejudicial. Two of these documents pertained to the government's lack of adequate pretermination procedures during the period before this lawsuit was filed. Responding to a discovery request, the government had admitted that one of the two documents was a copy of a form letter that had been sent from the Chief of Revenue and Taxation to Sablan, while the other was either an original or copy of a utility bill issued by the government. On appeal, the government does not state grounds for challenging their admissibility. Given the government's admissions during the course of discovery, we cannot discern any valid grounds for objecting to their introduction. Consequently, we do not see how the district court could have committed plain error by considering them.
 
 
 23
 The other document was a 1983 interoffice memorandum from the Attorney General informing various government agencies that the government's policy of terminating electric power without notice and a hearing ran afoul of the due process clause as interpreted by the Supreme Court in Memphis Light, Gas, and Water Division v. Craft, 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978) (Craft ). Arguably, as the government asserted in the district court, this memorandum was privileged, presumably as an attorney-client communication, and thus was inadmissible. Prejudice, however, does not result even from the admission of incompetent evidence, if the evidence admitted was merely cumulative of other evidence that was both admissible and probative of the matter at issue. See Fortier v. Dona Anna Plaza Partners, 747 F.2d 1324, 1332 (10th Cir.1984). Upon a careful reading of the district court's opinion, we conclude that this evidence was merely cumulative of other evidence that was both admissible and sufficient to sustain the district court's findings. As we will discuss in part IV, before the district court discussed the relevance of the 1983 memorandum, it had already concluded on the basis of a settlement offer from the government that "the Commonwealth did not have the requisite pretermination procedures" prior to that time. This settlement offer was one of the documents submitted by Sablan in his motion for attorney's fees. When the district judge subsequently cited the 1983 memorandum, he did so only to reinforce his previous conclusion that no notice and hearing procedure existed before the lawsuit was instigated and to express his dismay that "in 1983 Defendants were apprised by their own attorney of the unconstitutionality of their conduct but refused to adopt a policy in line with Craft."
 
 
 24
 Thus, even were we to assume that this 1983 memorandum from the Attorney General was privileged and that the district court erred in considering it in making its "prevailing party" determination, the government suffered no prejudice when the district court considered it.IV
 
 
 25
 We now address the government's contention that the district court erred in determining, on the basis of this evidence, that Sablan was a "prevailing party" for purposes of receiving attorney's fees under 42 U.S.C. Sec. 1988. The district court's factual determinations underlying its finding that Sablan is a "prevailing party" for purposes of collecting attorney's fees under 42 U.S.C. Sec. 1988 will not be set aside absent clear error. White v. City of Richmond, 713 F.2d 458, 460 (9th Cir.1983) (White ), disapproved on other grounds, Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, --- U.S. ----, 107 S.Ct. 3078, 3084 n. 6, 3086, 97 L.Ed.2d 585 (1987); see Lummi Indian Tribe v. Oltman, 720 F.2d 1124, 1125 (9th Cir.1983) (Lummi Indian Tribe ).
 
 
 26
 Under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. Sec. 1988, the district court may award reasonable attorney's fees to the "prevailing party" in a section 1983 action. See Doe v. Busbee, 684 F.2d 1375, 1378 & n. 1 (11th Cir.1982) (Busbee ). While a civil rights plaintiff must succeed on some aspect of the merits of a civil rights claim before he can be considered a "prevailing party," see Jensen v. City of San Jose, 806 F.2d 899, 900-01 (9th Cir.1986) (en banc), it is not necessary that he ultimately prevail on every claim asserted or obtain all the relief requested. Busbee, 684 F.2d at 1379; Reel v. Arkansas Department of Correction, 672 F.2d 693, 697 (8th Cir.1982) (Reel ). It is enough that a plaintiff " 'succeed on any significant issue in litigation which advances some of the benefit the parties sought in bringing suit.' " Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (Hensley ) (emphasis added), quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978) (Nadeau ); accord Clark v. City of Los Angeles, 803 F.2d 987, 989 (9th Cir.1986) (Clark ); Harris v. McCarthy, 790 F.2d 753, 757 (9th Cir.1986) (Harris ).
 
 
 27
 Moreover, "[p]laintiffs need not obtain formal relief in order to enjoy prevailing party status." Clark, 803 F.2d at 989; Ward v. County of San Diego, 791 F.2d 1329, 1334 (9th Cir.1986) (Ward ), cert. denied, --- U.S. ----, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987); Munro, 650 F.2d at 187. "Nothing in the language of Sec. 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated." Maher v. Gagne, 448 U.S. 122, 129, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980) (Maher ). Rather, as in this case, " 'parties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief,' " Hanrahan v. Hampton, 446 U.S. 754, 757, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980) (per curiam), quoting S.Rep. No. 1011, 94th Cong., 2d Sess. 5, 1976 U.S.Code Cong. & Admin.News 5908, 5912, as through "settlement" of their claims. Maher, 448 U.S. at 129, 100 S.Ct. at 2574-75; Ashley v. Atlantic Richfield Co., 794 F.2d 128, 131 (3d Cir.1986) (Ashley ). Indeed, no judicial relief or consent decree is required as long as a plaintiff's suit has "prompted defendants to take action to satisfy [its] demands." Harris, 790 F.2d at 759.
 
 
 28
 Hence, contrary to the government's suggestion, the fact that the present litigation culminated in a stipulation between the parties to dismiss their claims and counterclaims, rather than a formal judgment or consent decree awarding damages or imposing a permanent injunction, does not, in itself, dispose of the question whether Sablan prevailed within the meaning of section 1988. Our initial inquiry focuses, instead, on the " 'substance of the litigation's outcome' " to determine " 'if significant results [were] achieved by initiating suit.' " Reel, 672 F.2d at 697 (citations omitted). While engaging in this inquiry, our primary objective is to determine whether Sablan has established a "clear, causal relationship between the litigation brought and the practical outcome realized." Rutherford v. Pitchess, 713 F.2d 1416, 1419 (9th Cir.1983) (Rutherford ) (emphasis in original), quoting Munro, 650 F.2d at 188; accord Ward, 791 F.2d at 1334; Braafladt v. Board of Governors, 778 F.2d 1442, 1444 (9th Cir.1985) (Braafladt ). Phrased in equivalent terms, Sablan must show that his lawsuit " 'acted as a catalyst which prompted defendants to take action.' " Munro, 650 F.2d at 187, quoting Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 429-30 (8th Cir.1970).
 
 
 29
 Whether the lawsuit in this case was a catalyst for constitutional reform on the part of the government bifurcates into two subsidiary inquiries. First, we must determine what Sablan sought to accomplish in bringing his lawsuit and then determine whether the lawsuit was causally linked to the relief actually obtained. See California Association of the Physically Handicapped, Inc. v. FCC, 721 F.2d 667, 671 (9th Cir.1983) (CAPH ), cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 63 (1984); Fitzharris v. Wolff, 702 F.2d 836, 838 (9th Cir.1983) (Fitzharris ); accord Operating Engineers Local Union No. 3 v. Bohn, 737 F.2d 860, 863 (10th Cir.1984) (Bohn ). Second, there must be a legal basis for the Sablan's claim--it must not be "frivolous, unreasonable or groundless." See Fitzharris, 702 F.2d at 838. Stated otherwise, "the defendant's conduct in response to the lawsuit must be required by law," Bohn, 737 F.2d at 863, to ensure that the government did not act "gratuitously in response to a frivolous or legally insignificant claim." Crosby v. Bowling, 683 F.2d 1068, 1070 (7th Cir.1982); see also CAPH, 721 F.2d at 672, quoting Nadeau, 581 F.2d at 281.
 
 A.
 
 30
 The "causal link" prong of this two-part "catalyst" test for determining "prevailing party" status is nothing more than an inquiry into factual causation. See Fields v. City of Tarpon Springs, 721 F.2d 318, 321 (11th Cir.1983) (per curiam) (Fields ). "Whether a litigant has shown a sufficient causal relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court." Clark, 803 F.2d at 989-90; accord Braafladt, 778 F.2d at 1444. In conducting our review, we will begin by "compar[ing] the relief sought with that actually obtained...." Ashley, 794 F.2d at 131 (citations omitted). "[A]s long as the relief obtained is of the same general type" as that demanded by Sablan, we will then assess whether there was a "causal connection between the relief obtained and the lawsuit." Id. (citations omitted).
 
 
 31
 Sablan instituted this action to challenge the termination of his electrical power without prior notice and a hearing in violation of the due process clause of the Constitution. After filing suit, Sablan succeeded in securing a temporary restraining order requiring the government to restore his power and also convinced the government to stipulate that it would not disconnect his power again, absent a court order. More important, however, the district court found that, subsequent to the commencement of this action, the government abandoned its former practice of terminating electrical service without prior notice and a hearing, and that Sablan's action was responsible for the reversal of this former practice.
 
 
 32
 In making this finding, the district court relied upon the chronology of a series of mailings issued by various government agencies. The first correspondence cited by the district court was a form letter dated April 7, 1986, in which the Chief of Revenue and Taxation threatened to terminate Sablan's electrical service unless payment of the total amount due was made within 48 hours. No mention was made in this latter of any entitlement to notice and a hearing prior to termination. In fact, a subsequent utility bill dated September 30, 1986, declared that accounts containing past due amounts were "subject to discontinuance without further notice."
 
 
 33
 On October 10, 1986, Sablan filed a complaint alleging, among other things, that the government's policy and procedures regarding the disconnecting of electric services failed to include any provision for any pretermination notice or hearing whenever a billing dispute arose. Failure to provide such notice and hearing, the complaint alleged, deprived Sablan of a property right without due process of law.
 
 
 34
 Subsequently, on October 31, just 21 days following the filing of the complaint, Sablan was issued a new utility bill. While reiterating that customers with delinquent bills were subject to discontinuation of services, the bill no longer contained the warning that services could be terminated without prior notice. In its place was a proviso advising the recipient that "should you have any question on the amount due, you are entitled to a hearing with [Saipan Utility Agency] upon request before the disconnection date."
 
 
 35
 Approximately three weeks later, on November 12, the Assistant Attorney General wrote to Sablan's attorney, communicating a settlement offer by the Commonwealth Utilities Corporation (CUC) immediately "to formulate, and promulgate regulations regarding utility terminations, which regulations will specifically include notice of at least fifteen days[,] and a pre-termination hearing," in exchange for Sablan's dismissal of his action. The district court concluded from this letter "that the Commonwealth did not have the requisite pre-termination procedures on November 12, 1986." Particularly when viewed in conjunction with the various other mailings, we cannot say that the district court was clearly erroneous in deciding on the basis of this letter that, prior to the lawsuit, the government did not provide for notice and a hearing before discontinuing electrical services.
 
 
 36
 The district court ultimately concluded that "[i]t was only after [the government was] sued for one million dollars that they decided to 'formulate, and promulgate regulations regarding utility terminations.' " Further, the district court concluded that Sablan's "lawsuit has brought needed reform to the operations of the utility service in the Commonwealth" by "forcing [the government] to adopt a policy that they knew four years ago should have been adopted," and by "preventing [the government] from terminating their service, or anyone [else's] service, without first granting them fundamental due process."
 
 
 37
 In finding that Sablan's lawsuit prompted the government to reform a previously unconstitutional utility termination policy, the district court obviously believed that the sequence of events captured in Sablan's epistolary evidence was more than mere coincidence. The chronology of events that transpired, while not dispositive of the is ue of factual causation, was certainly a proper variable for the district court to weigh in its calculus. See Braafladt, 778 F.2d at 1444; Fields, 721 F.2d at 321; Posada v. Lamb County, 716 F.2d 1066, 1072 (5th Cir.1983) (Posada ); Nadeau, 581 F.2d at 281. We are loath to second-guess the probative value that the district court assigned to the sequence of events prior and subsequent to the commencement of this lawsuit. As the Fifth Circuit astutely recognized:
 
 
 38
 Clues to the provocative effects of the plaintiffs' legal efforts are often best gleaned from the chronology of events: defendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways. But credibility choices in the resolution of conflicting testimony are the district court's province as fact finder. Those conclusions can be set aside only if the evidence leaves us with the definite and firm conviction that the district court has made a mistake.
 
 
 39
 Posada, 716 F.2d at 1072 (citations omitted); accord Braafladt, 778 F.2d at 1444.
 
 
 40
 Keeping in mind that the inquiry into causal connection is, "[a]t bottom, ... an intensely factual, pragmatic one," Posada, 716 F.2d at 1072, we cannot conclude that the district court was clearly erroneous in inferring from this sequence of events a causal connection between Sablan's lawsuit and the government's change in termination proceedings.
 
 
 41
 The government further suggests that Sablan's failure to secure either a monetary award of some sort or a permanent injunction should have been considered by the district court in determining whether Sablan is a "prevailing party." Although Sablan's ability to obtain monetary or permanent injunctive relief might be relevant to the reasonableness of the amount of any attorney's fees awarded, it does not determine whether he is entitled to any fee at all as a "prevailing party." See Lummi Indian Tribe, 720 F.2d at 1125; Larsen v. Sielaff, 702 F.2d 116, 117 (7th Cir.), cert. denied, 464 U.S. 956, 104 S.Ct. 372, 78 L.Ed.2d 330 (1983). Recovery of attorney's fees is not barred just because Sablan's victory was entirely nonmonetary. See, e.g., White, 713 F.2d at 460; Rutherford, 713 F.2d at 1418-20; accord Ashley, 794 F.2d at 135-36. Nor is an award of attorney's fees precluded by the fact that Sablan did not succeed in obtaining the permanent injunction that he requested in his prayer for relief. Cessation of the government's erstwhile policy of terminating electrical services without notice and a hearing is, after all, "essentially the same as the injunctive relief sought in the complaint[ ]." White, 713 F.2d at 460. Thus, we hold that the district court did not commit clear error in finding that Sablan's lawsuit spurred the government into establishing procedures that would afford utility consumers notice and a hearing before their electricity was disconnected.
 
 B.
 
 42
 But simply finding that Sablan obtained some of the benefits sought in his complaint and that his lawsuit precipitated favorable action by the government is not enough. Before we can conclude that Sablan was a "prevailing party," we must still determine whether there was a legal basis for his claim. See CAPH, 721 F.2d at 671-72; Fitzharris, 702 F.2d at 836. " 'If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiff's interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense.' " CAPH, 721 F.2d at 672, quoting Nadeau, 581 F.2d at 281. For "prevailing party" purposes, a claim has a basis in law as long as it is not "frivolous, unreasonable or groundless." Fitzharris, 702 F.2d at 838.
 
 
 43
 We need pause only momentarily on this second prong of the "prevailing party" test, for it is too late in the day to argue that a public utility may, consistent with due process under Craft, terminate a consumer's utility service without prior notice and an opportunity to be heard, when the utility may only terminate such service for "cause." See Craft, 436 U.S. at 11-12, 98 S.Ct. at 1561-62. Apparently that is the case here because, as the district court observed, the government does "not take issue with this proposition nor do they argue that they are exempt from [Craft 's] requirements." Having determined that Sablan has satisfied the further requirement that his claim for relief finds some basis in the law, we can now conclude that the district court did not commit clear error in determining that Sablan was a "prevailing party" for the purpose of collecting attorney's fees under 42 U.S.C. Sec. 1988.
 
 C.
 
 44
 In a final attempt to undermine the district court's "prevailing party" determination, the government now insists that Sablan sought relief from the wrong parties. The government asserts that under the laws of the Commonwealth, the CUC has sole responsibility for connecting and terminating electric power and for promulgating and enforcing regulations. In view of this delegation of authority, and that the CUC has been given the capacity to sue and be sued in its own name, the government now argues for the first time that Sablan has sued the wrong parties, and thus cannot be deemed a "prevailing party." Although the government initially raised this argument in a motion to dismiss the case in the district court, it withdrew the motion on the eve of its hearing and did not attempt to resurrect the argument at some later stage in the district court proceedings. We decline to entertain this argument for the first time on appeal. See Smith v. United States Parole Commission, 850 F.2d 500, 507 (9th Cir.1988); Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985).
 
 V
 
 45
 Because the government does not dispute the reasonableness of the district court's fee award, we need not address whether it properly considered the appropriate factors in setting the award or whether it abused its discretion in applying these factors to the facts in this case. See Hensley, 461 U.S. at 430 n. 3, 103 S.Ct. at 1937; Fitzharris, 702 F.2d at 839; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 69-70 (9th Cir.1975), cert. denied, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). Consequently, we see no grounds for overturning the district court's award of attorney's fees.
 
 
 46
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)