**OREGON NATURAL RESOURCE COUNCIL as a membership organization and corporation, and Kathy Williams, Plaintiffs**

v.

**John F. TURNER, Director of the Fish and Wildlife Service of The United States Department of the Interior; Marvin L. Plenert, Regional Director One, of the Fish and Wildlife Service of the United States Department of the Interior; and Manual Lujan, Secretary of the United States Department of the Interior, Defendants.**

Civ. No. 92–6291–TC.

United States District Court,
D. Oregon.

July 6, 1994.

C. Peter Sorenson, organization and corporation Eugene, OR, for plaintiffs.

Thomas C. Lee, U.S. Attorneys Office, Portland, OR, Elinor Colbourn, U.S. Dept. of Justice, Environment & Natural Resources Div., Washington, DC, for defendants.

## ORDER

HOGAN, District Judge.

Magistrate Judge Thomas M. Coffin filed his Findings and Recommendation on June 1, 1994. The matter is now before me. *See* 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

No objections have been timely filed. This relieves me of my obligation to give the factual findings *de novo* review. *Lorin Corp. v. Goto & Co., Ltd.,* 700 F.2d 1202, 1206 (8th Cir.1983). *See also Britt v. Simi Valley Unified School Dist.,* 708 F.2d 452, 454 (9th Cir.1983). Having reviewed the legal principles *de novo,* I find no error.

Accordingly, I ADOPT Judge Coffins' Findings and Recommendation. Plaintiff's petition for an award of attorney fees and expenses (# 64) is denied, and the parties shall bear their own costs.

IT IS SO ORDERED.

## FINDINGS AND RECOMMENDATION

COFFIN, United States Magistrate Judge.

Plaintiffs petition the court for an award of attorneys' fees and expenses of litigation in the amount of $31,371.28. Such petition is made pursuant to 16 U.S.C. § 1540(g)(4), a section of the Endangered Species Act (ESA). For the reasons set forth below, the petition should be denied.[1]

### Factual Background

Plaintiffs brought this suit alleging that defendants failed to designate critical habitat for two endangered plant species (MacFarlane's four o'clock and Bradshaw's Desert Parsley (BDP)) and failed to develop a recovery plan for BDP. Plaintiffs concede that they did not prevail on their first two critical habitat claims,[2] but contend that they pre-

vailed on their third claim regarding the development of a recovery plan for BDP and are entitled to fees related to such claim. Defendants "vigorously oppose" the petition for fees and costs.

### The Third Claim

On June 4, 1992, plaintiffs sent their notice of intent to sue to the Secretary of Interior (Secretary), the Director of the United States Fish and Wildlife Service (USFWS), and the Regional Director for Region One of the USFWS, for violations of the ESA, 16 U.S.C. § 1533(f)(1) and (f)(4), and 16 U.S.C. § 1533(b)(6)(C). When the notified parties failed to immediately remedy the situations giving rise to the alleged violations, plaintiffs filed suit in the District Court for the District of Oregon on August 10, 1992. In the complaint, plaintiffs asserted their eligibility under ESA § 1540(g)(4) to recover attorney's fees. *Id.* at 6. After the initial service of the complaint, plaintiffs served requests for the production of documents, interrogatories, and requests for admissions.

On March 1, 1993, this Court issued a Findings and Recommendation (# 23) which was adopted in its entirety (# 32). Defendants' motion as to plaintiffs' claims related to the development of recovery plans for BDP was denied without prejudice to refile or to file as a summary judgment motion. The Court noted that the ESA establishes a non-discretionary duty for the Secretary to develop recovery plans for species listed as endangered and that plaintiffs conceded that the ESA imposes no time limit in which the

---

1. I also agree with defendant's contentions that even if fees were appropriate, the amount requested is excessive and should be reduced. However, I do not address this in detail because of my findings that fees are not appropriate.

2. Plaintiffs voluntarily withdrew their first claim regarding designation of critical habitat for MacFarlane's four o'clock by filing an amended complaint, the sole purpose of which was to delete this time-barred claim. This amended complaint was filed just seventeen days after the briefing of defendants' motion to dismiss the original complaint was completed. In that motion defendants argued, in part, that plaintiffs' first claim was barred by the applicable six-year statute of limitations. Final agency action regarding the critical habitat designation occurred in 1979 and was a matter of public record. .Defendants contend that plaintiffs' amended

complaint was an obvious acknowledgement that the claim regarding MacFarlane's four o'clock was in fact clearly barred by the applicable statute of limitations. Plaintiffs contend that the "claim was not necessarily dismissed because of defendants' statute of limitation defense" and that "[p]laintiffs elected to dismiss for other purposes." Pls.' Reply (# 73), pp. 9–10.

Plaintiffs' second claim regarding designation of critical habitat for BDP was found to require exhaustion of administrative remedies before it could be considered by the court and the claim was stayed pending such exhaustion. Findings and Recommendation (# 23). Plaintiffs never pursued their administrative remedies and did not oppose defendants' subsequent motion to vacate the stay and dismiss the claim. Pls.' Opp'n to Defs.' Mot. for Summ. J. (# 43) ("Plaintiffs do not oppose the Motion to Vacate Stay").

Secretary must act. The Court also noted that a complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief and invited defendants to provide further briefing with their refiled motion to dismiss. Briefing was to be on the issue of at what point, if ever, the Secretary's nonpublishing of a recovery plan becomes a failure to perform a duty. The Court recognized the status of the nearly completed draft recovery plan and stated that the above mentioned issue had the potential of being mooted.

On March 12, 1993, defendants filed the recovery documents for BDP. The documents included drafts of the recovery plan that were circulated for comment within the agency as early as September 1991. On April 8, 1993, the draft recovery plan was published in the Federal Register for review and comment. 58 Fed.Reg. 18225 (April 8, 1993).

On May 6, 1993, defendants filed a Motion for Summary Judgment (# 34) addressing the issues of timing raised in the Findings and Recommendation, and attached a copy of the published draft recovery plan. Defendants explained that no violation of a legal duty had occurred since the Secretary had been working on drafts of the recovery plan since at least September 1991 and had, on April 8, 1993, published a draft recovery plan for comment and review. Moreover, due to the publication of the draft plan, plaintiffs' claims were now moot.

Plaintiffs filed their Opposition to Defendant's Motion for Summary Judgment and Motion for Partial Summary Judgment on May 19, 1993 (# 43, # 44). Plaintiffs sought summary judgment on four issues. The first two issues sought summary judgment as to plaintiffs' standing and jurisdiction of the court. Neither issue had been raised by defendants and defendants did not oppose summary judgment as to these issues, noting that "briefing these issues seems only to increase unnecessarily the costs and fees already invested in this case." Defs' Opp'n to Pls.' Cross–Mot. for Partial Summ.J. (# 49) at 3 n. 1. Defendants also did not oppose plaintiffs' motion for partial summary judgment as to the fact that declaratory judgment would be an appropriate remedy if the court were to find for plaintiffs on the merits. Defendants strongly opposed plaintiffs' motion for summary judgment on the issue of whether the Secretary of the Interior had violated a statutory duty to develop a recovery plan. *Id.* at 5–11.

On June 1, 1993, defendants filed, and served on opposing counsel, the Declaration of David L. McMullen (# 50) stating that a final recovery plan would be complete on or before August 6, 1993. Oral argument on the pending motions for summary judgment was held by telephone on June 21, 1993. On June 24, 1993, plaintiffs' counsel requested by letter to the Court that the Court not rule on the pending motions because the case would become moot in light of the statement by defense counsel at oral argument that the final recovery plan would be complete by August 6, 1993, information plaintiffs' counsel had been provided at least three weeks prior to the hearing date. Defendants requested by reply letter that the Court proceed with its deliberation on the pending motions.

On August 12, 1993, defendants informed the Court and opposing counsel that completion of the final recovery plan would be delayed until August 13, 1993. The recovery plan was completed on August 13, 1993, and submitted to the Court on August 18, 1993 (# 60). On October 16, 1993, the parties filed a Joint Stipulated Motion of Dismissal (# 62), and on October 18, 1993, the Court entered a Judgment of Dismissal (# 63) pursuant to that motion.

### Discussion

The ESA states that the court may award costs of litigation including reasonable attorney fees whenever the court determines that such an award is appropriate. 16 U.S.C. § 1540(g)(4). In determining whether a grant of reasonable attorney's fees is appropriate, the court must first consider whether a plaintiff is a prevailing party. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). While a plaintiff must succeed on some aspect of the merits of his case to be considered a "prevailing par-

ty," it is not necessary that he or she ultimately prevail on every claim asserted or obtain all the relief requested. *Sablan v. Dept. of Finance of the Commonwealth of the Northern Mariana Islands,* 856 F.2d 1317 (9th Cir.1988) (citations omitted). Moreover, a party need not obtain formal relief after a full litigation of the issues or after a judicial determination. *Id.* Rather, a party may be considered to have prevailed when he or she vindicates rights through settlement, a stipulation to dismiss or a consent judgment and the suit has prompted the opposing party to take action to satisfy the party's demands. *Id.* A party seeking fees must establish a clear, causal relationship between the litigation brought and the practical outcome realized. Phrased in equivalent terms, the party must show that his lawsuit acted as a catalyst which prompted the opposing party to take action. *Id.*

■ Whether a lawsuit was a catalyst that prompted the opposing party to take action bifurcates into two subsidiary inquiries. First, it must be determined what the party sought to accomplish in bringing his lawsuit and then whether the lawsuit was causally linked to the relief actually obtained. Second, there must be a legal basis for the party's claim—it must not be frivolous, unreasonable or groundless. Stated otherwise, the opposing party's conduct in response to the lawsuit must be required by law to ensure that the government did not act gratuitously in response to a frivolous or legally insignificant claim. *Id.*

*First Prong of Catalyst Test—"Causal Link"*

■ The "causal link" prong of this two-part "catalyst" test for determining "prevailing party" status is nothing more than an inquiry into factual causation. *Id.* Whether a litigant has shown a sufficient causal relationship between the lawsuit and the practical outcome realized is a pragmatic factual inquiry for the district court. The relief sought should be compared with the relief actually obtained and, if it is of the same

general type, an assessment should be made whether there was a causal connection between the relief obtained and the lawsuit.

■ The relief sought in the claim plaintiffs are seeking fees for was establishment of a recovery plan for BDP. Defendants completed the recovery plan which mooted the suit and led to the stipulated motion of dismissal. As the relief sought and obtained were of the same general type, an assessment should be made of whether there was a causal connection between the relief obtained and the lawsuit.

■ Plaintiffs rely exclusively on a chronology of events that they allege "supports a causal relationship between plaintiffs' lawsuit and the defendants' issuing a proposed recovery plan." Pl.Mem. at p. 10, attached to # 64. Chronological events are important, although not a definitive factor, in determining whether or not a defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit. *Braafladt v. Board of Governors of Or. St. Bar Ass'n,* 778 F.2d 1442, 1444 (9th Cir.1985); *Forest Conservation Council v. Devlin,* 994 F.2d 709, 712 (9th Cir.1993). A district court can consider other factors in determining if a causal relationship existed. *Braafladt,* 778 F.2d at 1444. In addition, a causal relationship between a lawsuit and the relief received requires more than knowledge that litigation may occur. *American Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981); *Forest Conservation,* 994 F.2d at 712.

The following are the applicable portions of the recovery plan chronology. A final rule listing BDP as an endangered species was published on September 30, 1988.[3] 53 Fed. Reg. 38448. The Fish and Wildlife Service had a draft recovery plan in progress in September of 1991. Marvin Plenert, the regional director of the Service, informed Dr. Love in a letter that "[a] recovery for [BPD] is nearing completion and will be approved in 1991." Ex. J to Mot. for Summ. J., # 44. That deadline was not realized and a second

---

3. Plaintiffs have also set forth the chronological history of the listing of BDP as an endangered species. Pls.' Mem. at pp. 8–9, attached to # 64. However, this history is largely irrelevant to the

claim at issue for the establishment of a recovery plan. Nevertheless, a consideration of this history does not change my conclusion on this matter.

draft was completed on July 22, 1992. On June 4, 1992, plaintiffs sent their notice of intent to sue for failure to develop, implement and publish a recovery plan. Plaintiffs filed this lawsuit on August 10, 1992. A third draft of the plan was completed in August of 1992. A proposed plan was published for comment and review on April 8, 1993. After the required notice and comment period, the recovery plan became final on August 13, 1993, approximately fourteen months after plaintiffs filed their notice of intent to sue.

Plaintiffs have not established a sufficient causal relationship between their lawsuit and the completion of the recovery plan for BDP. The lawsuit does not appear to be a material factor in causing defendants' actions. Defendants were working on the plan a year *before* plaintiffs filed suit and had a final recovery plan approximately fourteen months after the litigation began. Plaintiffs' failure to establish a causal connection is especially evident when it is considered that other factors such as a limitation of funds and the need and ability to prioritize projects may be the overriding factors controlling the timing of the development of recovery plans.

*Second Prong of Catalyst Test—"Legal Basis for Claim"*

In addition to plaintiffs' failure to establish a sufficient causal connection between their lawsuit and the publication of a recovery plan, plaintiffs have also failed to meet the second part of the test for obtaining fees under the catalyst theory.

Under the second inquiry, the court must determine whether there was a legal basis for the claim. *Andrew v. Bowen*, 837 F.2d 875 (9th Cir.1988). While this requires some evaluation of the merits, this evaluation is extremely limited. The extent of the court's inquiry is strictly limited to determining whether the claims asserted are "frivolous, unreasonable, or groundless, or [whether] the plaintiff continued to litigate after [they] became so." [4] *Id.* at 878 (quoting *Ortiz de Arroyo v. Barcelo*, 765 F.2d 275, 282 (1st Cir.1985).

Plaintiffs acknowledge, and this Court found, that there is no statutory time limit within which the Secretary is required to develop and publish a recovery plan.[5] *See* 16 U.S.C. § 1533(f). Thus, in order to prevail in their action, plaintiffs would have to show that the Secretary had determined affirmatively not to develop a recovery plan, or possibly that the time lapse after listing and before development and publication of a recovery plan was so great and so unreasonable as to amount to a complete failure to fulfill a duty. *See* Findings and Recommendation (# 23). Plaintiffs have not, and could not have, made such a showing in this case. Thus, even if defendants had hastened somewhat their development of the recovery plan after commencement of this lawsuit,[6] it cannot be said they were under any legal obligation to so advance the promulgation of this plan; in that sense, plaintiffs' lawsuit was unreasonable and groundless. This is especially true when it is considered that defen-

**4.** As to continued litigation, there is a point worth noting immediately. Plaintiffs sent the court a letter shortly after the parties' motions for summary judgment were briefed and argued before the court. Such letter requested the court to delay its ruling on the pending motions and noted that they might be mooted. Defendants' response to this letter indicates how this situation arguably constitutes continued litigation after a claim became unreasonable:

Plaintiffs assert that their request stems from defense counsel's statement during oral argument that a recovery plan would be complete on or before August 6, 1993. That information was provided to plaintiffs and appears in the court record as of June 1, 1993 (Declaration of David L. McMullen). Moreover, plaintiffs have been aware since *at least* April 8, 1993, (the date the draft recovery plan was published for public comment) that the process of develop-

ing a recovery plan was nearing completion. If plaintiffs truly believed that this information mooted the issues they raise, they could have so stated at that time and arguably obviated the need for the entire briefing and argument process. In our view, plaintiffs are attempting only to better position themselves, by avoiding a potentially adverse decision, for their anticipated motion for attorney fees.

Defendants' letter dated June 29, 1993.

**5.** Plaintiffs state that they relied on the Regional Director's statement that the plan would come out in 1991. However, this is not dispositive of the issue at hand in light of the statutory framework and the Secretary's ability to prioritize projects.

**6.** This Court has found above that this was not the case.

dants had started developing the recovery plan before plaintiffs acted and that BDP was already protected under the ESA as discussed below.

■ Under the ESA, the Secretary of the Interior is required to develop and implement plans for the conservation and survival of listed species (recovery plans), unless he or she finds that such a plan will not promote the conservation of the species. 16 U.S.C. § 1533(f). Congress recognized that development of recovery plans for listed species would take significant time and resources. It therefore provided in the ESA that the Secretary could establish a priority system for developing and implementing such plans. *Id.* This priority system allows the Secretary broad discretion to allocate scarce resources to those species that he or she determines would most likely benefit from development of a recovery plan. Unlike other requirements under the ESA, such as the designation of critical habitat, the statute places no time constraints on the development of recovery plans. *See* 16 U.S.C. § 1533(f).

BDP was assigned a recovery priority of "5" on a scale of 1 through 18 ("1" being the highest priority) using the Fish and Wildlife Service Listing and Recovery Priority Guidelines. Decl. of David L. McMullen (# 50) at ¶ 2. This priority is assigned to species that have a high degree of threat and a low recovery potential. *Id.* By April of 1991, the Fish and Wildlife Service entered into a two-year contract with The Nature Conservancy to develop a draft recovery plan for BDP. After extensive revisions, the notice of availability for public comment of the draft recovery plan was published in the Federal Register on April 8, 1993. 58 Fed.Reg. 18225 (April 8, 1993). The normal 60–day comment period for that draft plan expired on June 7, 1993. *Id.* The final recovery plan

with implementation schedule was completed on August 13, 1993.

Plaintiffs bear the burden in this case of demonstrating that the Secretary did not act within a reasonable time or unreasonably delayed a recovery plan. 5 U.S.C. § 706.[7] Plaintiffs fail to meet this burden.

Plaintiffs point to four factors to be considered in determining whether agency action is unreasonably delayed: (1) the length of time elapsed since the agency came under a duty to act; (2) the reasonableness of the delay in the context of the purpose of the statute; (3) the consequences of the delay; and (4) consideration of any administrative error, administrative convenience, practical difficulty in carrying out a legislative mandate, or *need to prioritize in the face of limited resources.* Pl.Mem. (# 64) at 14(emphasis added), *citing In re International Chemical Workers Union et al.,* 958 F.2d 1144 (D.C.Cir.1992). These factors are addressed in order.

First, both parties agree that the duty to develop a recovery plan for BDP began once the plan was listed as an endangered species, on September 30, 1988. Thus, there was at most a two and one-half year delay between the time the agency came under a duty to develop a recovery plan, which is the claim at issue here, and the time it began actively to fulfill that duty. The recovery plan was finalized on August 13, 1993. Implementation will occur over the ensuing five years in accordance with the implementation schedule.

Factors two and three—the unreasonableness of the delay in the context of the purpose of the statute and the consequences of the delay—can be addressed together. Plaintiffs allege that the delay has resulted in additional degradation of the species which can be traced to the delay of implementation of a recovery plan.[8]

---

7. The standard of review under 5 U.S.C. § 706(1) requires the court to determine whether the agency has violated its statutory mandate by failing to act. *Environmental Defense Fund Inc. v. Costle,* 657 F.2d 275, 283 (D.C.Cir.1981). The standard of review in such cases is very limited. *Price v. Pierce,* 615 F.Supp. 173 (D.C.Ill.1985) ("Judicial review of claims of agency inaction is extremely limited."), *aff'd,* 823 F.2d 1114 (7th

Cir.1987), *cert. denied,* 485 U.S. 960, 108 S.Ct. 1222, 99 L.Ed.2d 422 (1988).

8. Plaintiffs also make allegations that BDP should have been listed as endangered earlier than it was and that *that* delay harmed the plaintiffs. Harm, if any, allegedly attributable to delay in an earlier listing decision not challenged here is not relevant to whether harm resulted

Specifically, plaintiffs express concern that the plant was not sufficiently protected against threats from development in the absence of a recovery plan. Pl.Mem. (# 64) at 16 (lack of a recovery plan has "left biotic communities unprotected from encroaching development at a number of the BDP sites."). However, the plant was already afforded the full protection of the provisions of the ESA. Section 9(a)(2) of the ESA makes it unlawful for any person subject to the jurisdiction of the United States to, *inter alia*, import or export; transport in interstate or foreign commerce in the course of a commercial activity; sell or offer for sale this species in interstate or foreign commerce; remove and reduce to possession the species from areas under federal jurisdiction; maliciously damage or destroy this species on any such area; or remove, cut up, or damage or destroy any such species on any other area in knowing violation of any law or regulation of any state.[9] 16 U.S.C. § 1538(a)(2).

In addition, Section 7(a) of the ESA requires federal agencies to insure, in consultation with the Fish and Wildlife Service, that any activities that they authorize, fund or carry out are not likely to jeopardize the continued existence of a listed species. Thus, to the extent that proposed development required federal permits or other federal authorization or funding, that development would be subject to applicable ESA consultation requirements with or without a recovery plan. To the extent that threatened development is on private land and requires no federal action, if protection is lacking, it will be lacking whether a recovery plan is in place or not. Congress has not sought to regulate action affecting listed plant species located on private lands that do not enter into interstate or foreign commerce and do not require any federal authorization, except to the extent that State law prohibits the action. 16 U.S.C. § 1538(a)(2)(B). Moreover, the development and publication of a recovery plan in and of itself would not have afforded the endangered species any additional protection. The recovery plan presents a guideline for future goals but does not

mandate any actions, at any particular time, to obtain those goals.

The purpose of the ESA is to conserve threatened and endangered species. 16 U.S.C. § 1531. The protective prohibitions contained in the ESA to carry out that purpose have applied fully to BDP since the time of its listing in 1988. Furthermore, any action since the listing, authorized, funded or carried out by a federal agency, requires consultation with the Fish and Wildlife Service to insure that the activity will not jeopardize the continued existence of the species. 16 U.S.C. § 1536(a). The recovery plan may provide added conservation benefits with the goal of ultimately delisting the plant. However, the immediate concern of insuring the continued existence of BDP has been served by the provisions of the ESA itself.

Moreover, the ESA itself omits any time limits for the preparation of a recovery plan. Had Congress felt that the development and implementation of a recovery plan was an immediate necessity, it could have set a time limit as it did for the designation of critical habitat. The fact that no such time limit is set forth is part of the context of the statute and must be considered in determining whether a delay is unreasonable.

As to the final factor, plaintiffs have conceded, and Congress expressly recognized in the ESA, that it is entirely appropriate to consider administrative concerns such as the need to prioritize in the face of limited resources. In the present case, defendants note that some delay is attributable to such prioritization. First, staff were initially placed on higher priority work, such as preparing listing packages for Oregon plants not yet designated as threatened or endangered. Decl. of David L. McMullen (# 50) ¶ 3. In addition, the Fish and Wildlife Service was unable to contract out the preparation of a recovery plan due to a shortage of funds. *Id.*

In short, a thorough review of the factors set forth by plaintiffs reveals that the timing of and any delay in developing the recovery plan was not unreasonable. Any delay in this case did not rise to a constructive failure to fulfill a duty imposed by the ESA where

from actions, or lack thereof, *since* that listing occurred.

9. Certain exceptions can apply to agents of the Fish and Wildlife Service and state conservation agencies. *Id.*

the ESA itself contains no time constraints on the promulgation and implementation of a recovery plan. Moreover, plaintiffs have not shown that, had the Secretary published the recovery plan at some *later* date, the Secretary would have violated even then any duty under the ESA.

Plaintiffs failed to establish a sufficient causal connection between the litigation and the publication of the recovery plan. Moreover, plaintiffs also failed to demonstrate that there was a legal basis for their claim. Plaintiffs are not a prevailing party under the catalyst theory upon which they rely.

*Plaintiffs Are Not Entitled to Fees Because They Have Not Made a Substantial Contribution to the ESA*

In addition to the reasons discussed above, plaintiffs are not entitled to fees because they have not made a substantial contribution to the ESA. The Ninth Circuit has unequivocally rejected the argument that some degree of success on the merits is all that is required to establish entitlement to an award of fees under the ESA. *Carson–Truckee Water Conservancy Dist. v. Secretary*, 748 F.2d 523, 525–526 (9th Cir.1984), *cert. denied*, 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985). Under 16 U.S.C. § 1540(g), fees are awarded when "such award is appropriate." An award is appropriate when a plaintiff has (1) prevailed on the merits and (2) contributed substantially to the goals of the Act in doing so. *Abramowitz v. U.S. E.P.A.*, 832 F.2d 1071 (9th Cir.1987); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682–684, 103 S.Ct. 3274, 3276–77, 77 L.Ed.2d 938 (1983); *Carson–Truckee, supra.* Plaintiffs have failed to address this requirement and have not made such a contribution.

The only claim remaining in the action prior to judgment was for the development and publication of a recovery plan for BDP. Defendants were already developing the plan a year before plaintiffs filed suit. The publication of the plan occurred in due course approximately fourteen months after litigation began. Even if the publication occurred sooner than it might otherwise have oc-

curred,[10] it was not legally required to be published any sooner. Any alleged limited time difference would not constitute a substantial contribution to the goals of the ESA. *See Village of Kaktovik v. Watt*, 689 F.2d 222, 227 n. 38 (D.C.Cir.1982) (rejecting plaintiffs' argument that suit had positive effect of adoption of new biological opinion where court had previously ruled the old one adequate).

### Conclusion

An award of fees is not appropriate in this action. As such, plaintiffs' petition (# 64) for an award of attorney fees and expenses should be denied.[11] The parties should bear their own costs.

DATED this 1st day of June, 1994.

---

10. See footnote 6.

11. It appears that a magistrate's ruling on a petition for attorney fees should arguably be in the form of a Findings and Recommendation rather than an Order. *See Estate of Conners v. O'Connor*, 6 F.3d 656 (9th Cir.1993).