ENVIRONMENTAL PROTECTION IN-
FORMATION CENTER, INC., a non-
profit corporation; and, Sierra Club,
Inc., a non-profit corporation, Plain-
tiffs,

v.

PACIFIC LUMBER COMPANY, a De-
laware corporation; Scotia Pacific
Holding Company, a Delaware corpo-
ration; and Salmon Creek Corpora-
tion, a Delaware corporation, Defen-
dants.

No. C98–3129 MHP.

United States District Court,
N.D. California.

Sept. 19, 2002.

Brian Gaffney, Oakland, CA, Tara L. Mueller, Environmental Law Foundation, Oakland, CA, Brendan Cummings, Berkeley, CA, Sharon E. Duggan, Sharon E. Duggan Law Offices, Berkeley, CA, Richard M. Pearl, Richard M. Pearl Law Offices, Berkeley, CA, for Plaintiffs.

Bruce S. Flushman, Edgar B. Washburn, David M. Ivester, Christopher J. Carr, Stoel Rives, LLP San Francisco, CA, Jared G. Carter, Frank Shaw Bacik, Carter, Behnke, Oglesby & Bacik, Ukiah, CA, for Defendants.

## MEMORANDUM AND ORDER

### Re Attorneys' Fees

### (On Remand)

PATEL, Chief Judge.

Plaintiffs Environmental Protection Information Center ("EPIC") and Sierra Club brought this action against defendants Pacific Lumber Company and its subsidiaries Scotia Pacific Holding Company and Salmon Creek Corporation (collectively "PALCO") alleging violations of section 7(d) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(d), and seeking declaratory and injunctive relief. The court awarded the requested injunctive relief in an interim order on September 3, 1998, thereby prohibiting PALCO from conducting or allowing logging activities within the boundaries of Timber Harvest Plans ("THP") Nos. 1–96–413 HUM, 1–96–307 HUM and 1–97–286 HUM. The court memorialized this order on March 15, 1999. On May 5, 1999, this court granted defendants' motion for summary judgment and dismissed the action as moot because the consultation period required by ESA section 7(d) had ended, terminating PALCO's duty to refrain from making any further irretrievable commitment of resources. On August 20, 1999, the court recognized plaintiffs' substantial success in this litigation by awarding attorneys' fees pursuant to the ESA, 16 U.S.C. § 1540(g)(4). On July 24, 2001, the Ninth Circuit directed the court to vacate as moot the court's written March 15, 1999 preliminary injunction order and portions of its May 5, 1999 summary judgment order. The Ninth Circuit further directed the court to reconsider plaintiffs' eligibility for attorneys' fees without reliance on the vacated orders. Now before this court is plaintiffs' renewed application for attorneys' fees. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court now enters the following reformed memorandum and order.[1]

*BACKGROUND*

Underlying this dispute are lands which are subject to an agreement between PALCO and its parent company, MAXXAM, Inc., the federal government and the state of California to preserve a 7,500–acre tract of old growth redwood forest in Humboldt County, California. The agreement is commonly known as the "Headwaters Agreement." 63 Fed.Reg. 37900–02 (July 14, 1998). The Headwaters Agreement originally anticipated the exchange of the tract of old growth forest for federal and state assets with a value of $300 million and other properties. *Id.* The Headwaters Agreement also called for, among other things, the development and submission by PALCO of an Incidental Take Permit ("ITP") application pursuant to section

---

1. The Ninth Circuit did not challenge the court's substantive analysis. Nor did it question plaintiffs' eligibility for attorneys' fees under the ESA. It merely directed this court to "reconsider the attorneys' fees issue without reliance [on the vacated orders]." *EPIC* *v. PALCO,* 17 Fed.Appx. 538, 539, 2001 WL 949956, *1 (9th Cir.2001). The court's analysis remains largely unchanged. Consequently, much of the reformed order mirrors the original.

10(a)(1)(B) of the ESA, 16 U.S.C. § 1539(a)(1)(B). *Id.*

On June 12, 1998, PALCO applied for an ITP to the U.S. Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") (collectively, "the Services"). *See* 63 Fed.Reg. 37900. The ITP would authorize PALCO to incidentally take 17 listed species and some species that are currently not, but may become, listed during a fifty-year period on approximately 211,000 acres of land owned by PALCO and its subsidiaries. These lands include areas within the Mattole River watershed and the Sulphur Creek and Bear Creek drainages, which according to plaintiffs, are the critical habitats of several species listed as threatened or endangered under the ESA, including the coho salmon ("coho"). In July 1998, in conjunction with its permit application, PALCO submitted a proposed Habitat Conservation Plan ("HCP") in accordance with the requirements of ESA section 10(a)(2)(A), 16 U.S.C. § 1539(a)(2)(A), and a proposed Implementation Agreement. 63 Fed.Reg. 37900.

Meanwhile, because the California Department of Forestry approved the three PALCO THPs in question, PALCO began logging in these areas during the time that the Services were to be consulting on PALCO's ITP application. Pls.' Mot. for Attorneys' Fees (June 21, 1999) at 4:8–4:14 (original fee request). Therefore, on August 12, 1998, plaintiffs filed their complaint seeking a declaratory judgment that PALCO was violating section 7(d) of the ESA by continuing to log in the areas related to the ITP. Plaintiffs also sought a Temporary Restraining Order ("TRO"). On August 14, 1998, Judge Henderson issued the requested TRO and enjoined PALCO from logging within the three areas covered by the above-mentioned THPs. On September 3, 1998, this court converted the TRO into a preliminary injunction. It also extended the original injunction by preventing PALCO from removing logs from the forest floor in those areas. On March 15, 1999 this court memorialized the bench order in writing, fully adjudicating the preliminary injunction.

The Services issued a notice of receipt and availability for public comment for PALCO's permit application, HCP, and proposed Implementation Agreement pursuant to the notice and public comment requirement of section 10(c) of the ESA. 63 Fed.Reg. 37900, 37900–01. On November 16, 1998, the FWS and NMFS initiated "formal consultation" on the Services' proposal to issue an ITP to PALCO pursuant to section 10(a)(1)(B) and its implementing regulations at 50 C.F.R. Parts 17 and 222, respectively. *See* Letter dated November 16, 1998 from the Services to John Campbell. The Services also stated:

> Based on the initiation of formal consultation, the provisions of section 7(d) of the Act and 50 C.F.R. § 402.09 now apply. Under Section 7(d) PALCO may make no irreversible or irretrievable commitment of resources that would have the effect of foreclosing the formulation or implementation of any reasonable or prudent alternatives which would avoid violating section 7(a)(2) of the Act.

*Id.*

On January 22, 1999, the Services issued a notice of availability of the joint final Environmental Impact Statement/Environmental Impact Report ("EIS/EIR") and Habitat Conservation Plan ("HCP")/Sustained Yield Plan ("SYP") relating to the issuance of the ITPs. 64 Fed.Reg. 3483 (Jan. 22, 1999). The notice of availability states that decisions on the action for which the EIS/EIR was prepared "will occur no sooner than February 22, 1999." *Id.* In part, the final EIS/EIR is intended to "indicate any irreversible commitment of resources that would result from imple-

mentation of the final proposed action." *Id.* at 3485. On February 24, 1999, the Services issued a Biological/Conference Opinion ("BO") on PALCO's request for the ITPs. On February 25, 1999, the Services also finalized their Record of Decision ("ROD") supporting the issuance of the ITP and related actions. The ITP was issued on February 26, 1999, to be effective on March 1, 1999, upon finalization of the Headwaters Agreement. On March 1, 1999, the Headwaters Agreement was finalized and both the BO and the ITPs were released.

In its BO, the NMFS determined that the issuance of the ITP is neither "likely to jeopardize the continued existence" of the Southern Oregon/Northern California Coast Evolutionary Significant Unit coho, nor "likely to destroy or adversely modify [their] proposed critical habitat." ROD, App. B at 12. The BO also states in closing:

> This concludes formal consultation and conference on the action outlined in the request. As provided in 50 C.F.R. § 402.16, reinitiation of formal consultation is required where discretionary Federal agency involvement or control over the action has been retained (or is authorized by law) and if: (1) the amount or extent of incidental take is exceeded; (2) new information reveals effects of the agency action that may affect listed species or critical habitat in a manner or to an extent not considered in this opinion; (3) the agency action is subsequently modified in a manner that causes an effect to the listed species or critical habitat not considered in this opinion; or (4) a new species is listed or critical habitat designated that may be affected by the action. In instances where the amount or extent of incidental take is exceeded, any operations causing

such take must cease pending reinitiation.

BO at 416–17.

Prior to the release of the BO and the ITP, plaintiffs filed a motion for partial summary judgment asking this court to declare PALCO subject to the provisions of ESA section 7(d). PALCO filed a cross motion for summary judgment and motion for dismissal arguing that the action was mooted by the completion of consultation required by ESA section 7(d). On May 5, 1999, this court issued an order granting defendants' motion for summary judgment and/or motion to dismiss as moot and denying plaintiffs' motion for partial summary judgment.

On August 20, 1999, this court awarded plaintiffs attorneys' fees in the amount of $223,130 and costs of $8,935.42 because the litigation substantially contributed to the goals of the ESA.

Defendants subsequently appealed the September 3, 1998 interim preliminary injunction order and the written March 15, 1999 order; those portions of the May 5, 1999 summary judgment order addressing the merits of this action; and the judgment entered on May 5, 1999. Pls.' Renewed Mot., Exh. C ("Notice of Appeal," May 13, 1999); *see also* Pearl Supp. Dec. (Feb. 25, 2002), Exh. D ("Appellant's Reply Br."). The Ninth Circuit did not address the merits of the litigation nor vacate the September 3, 1998 order, but granted defendants' remaining requests. *EPIC v. PALCO*, 257 F.3d 1071 (9th Cir. 2001). The Ninth Circuit further filed a memorandum disposition, directing this court to reconsider plaintiffs' attorneys' fees request without reliance on the March 15 order or the vacated portion of the May 5 order. *EPIC v. PALCO*, 17 Fed.Appx. 538, 539, 2001 WL 949956, *1 (9th Cir. 2001).

Plaintiffs contend that they are entitled to attorneys' fees and costs in the amount of $295.797.05 because this litigation substantially contributed to the goals of the ESA, notwithstanding the Ninth Circuit decision. Plaintiffs' request reflects interest on the original award and fees and costs incurred preparing the renewed attorneys' fees motion.

## LEGAL STANDARD

### I. Fee Eligibility

In any citizen suit brought under the Endangered Species Act, a district court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Thus, a court's discretion to award attorneys' fees is restricted to "appropriate" cases. Although the Supreme Court has not explicitly considered the contours of "appropriateness" in the context of the Endangered Species Act, it considered an identical attorneys' fees provision of the Clean Air Act in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).[2] The Court held that a party need only prevail in part, i.e., achieve "some degree of success on the merits," before a district court may determine that an award of attorneys' fees is appropriate. *Id.* at 694, 103 S.Ct. at 3282.

The Court thus found that the attorneys' fees provision of the Clean Air Act creates a less-demanding standard than that of civil rights statutes. The Civil Rights Act, 42 U.S.C. § 1988, for example, limits attorneys' fees to "prevailing parties." To qualify, one must prevail "on a significant issue in the litigation" and "obtain[ ] some of the relief ... sought." *Texas Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 793, 109 S.Ct. 1486, 1494, 103 L.Ed.2d 866 (1989). In contrast, the Clean Air Act, "expand[s] the class of parties eligible for fee awards from prevailing parties to *partially prevailing* parties—parties achieving *some success*, even if not major success." *Ruckelshaus*, 463 U.S. at 688, 103 S.Ct. at 3279 (emphasis in original).

The Ninth Circuit subsequently considered attorneys' fees standards under the ESA, noting that courts should award fees in environmental actions if the party has substantially contributed to the goals of the statute. *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523, 525 (9th Cir.1984).[3] By this standard, "whether the party claiming costs or fees has prevailed does not control the inquiry on appropriateness[. Instead,] the dominant consideration is whether litigation by the party has served the public interest by assisting the interpretation [or]

**2.** Section 307(f) of the Clean Air Act provides that: "The court in issuing any final order in any action brought pursuant to subsection (a), may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 42 U.S.C. § 7604(d).

**3.** Plaintiffs suggest that *Marbled Murrelet v. Babbitt*, 182 F.3d 1091 (9th Cir.1999), eliminated the "substantial contribution" requirement. Pls." Renewed Mot. at 18 n. 9. *Marbled Murrelet,* however, addressed the proper standard for an award of attorneys' fees to an ESA *defendant.* The Ninth Circuit changed the standard for prevailing ESA defendants from that outlined in *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523, 525 (9th Cir.1984), to the standard laid down in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). *Id.* at 1094. Since the instant fee request comes from ESA plaintiffs, rather than defendants, the proper inquiry is whether plaintiffs prevailed as outlined in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), in combination with the substantial contribution requirement. *Id.*

implementation of the ... Act.'" *Id.* (quoting *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 3 (D.C.Cir.1982)).[4]

## II. Calculating Attorneys' Fees

■ If fees are appropriate, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *Jordan v. Multnomah County,* 815 F.2d 1258, 1262 (9th Cir.1987). This product is the lodestar. While the lodestar is the presumptively reasonable fee award, *Ferland v. Conrad Credit Corp.,* 244 F.3d 1145 (9th Cir.2001), it may be adjusted to accommodate degree of success. In calculating the lodestar, the court must determine both a reasonable number of hours and a reasonable hourly rate for each attorney. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended by* 808 F.2d 1373 (1987).

The district court has tremendous discretion in fashioning a fee award. *See Corder v. Howard Johnson & Co.,* 53 F.3d 225, 229 (9th Cir.1994); *Lads Trucking Co. v. Board of Trustees,* 777 F.2d 1371 (9th Cir.1985) (the district court's determination should be reversed only for abuse of discretion); *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 452 (9th Cir.1980) ("Abuse of discretion is found only when there is a definite conviction that the court made a clear error of judgment in its conclusion upon weighing relevant factors.").

## DISCUSSION

### I. Eligibility for Attorneys' Fees

This court previously awarded plaintiffs attorneys' fees pursuant to the Endangered Species Act ("ESA"), 16 U.S.C. § 1540(g)(4). *See* Pls.' Renewed Mot., Exh. A ("Fee Order," Aug. 20, 1999). Such award was based on the court's determination that plaintiffs had substantially contributed to the goals of the Act by facilitating its interpretation and implementation. The Ninth Circuit has since directed the court to "reconsider the attorneys' fees issue without reliance on the March 15 order or the [vacated portion] of the May 5 order." *EPIC v. PALCO,* 17 Fed.Appx. 538, 539, 2001 WL 949956, *1 (9th Cir.2001). In accordance with this direction, the court issues this attorneys' fee order reexamining plaintiffs' fee eligibility.

Significantly, while the Ninth Circuit vacated the March 15 order, it did not reverse or vacate the September 3 preliminary injunction, despite PALCO's request that it do so. *See* Notice of Appeal; *see also* Appellant's Reply Br. at 15 & n. 6. The September 3 interim injunction extended the existing TRO and prohibited all logging activity pending issuance of an Incidental Take Permit ("ITP") by the Services. This was the same benefit secured by the March 15 order and remains unaffected by the Ninth Circuit decision. The mooting of the March 15 order is not dispositive. *See Williams v. Alioto,* 625 F.2d 845, 847–48 (9th Cir.1980) ("Our previous dismissal of the appeal as moot and vacation of the district court judgment does not affect the fact that for the pertinent time period appellees obtained the desired relief"); *National Black Police*

---

**4.** *Carson–Truckee Water Conservancy District v. Secretary of the Interior,* 748 F.2d 523, 525 (9th Cir.1984), misquotes *Alabama Power Co. v. Gorsuch,* 672 F.2d 1, 3 (D.C.Cir.1982). In fact, *Alabama Power Co.,* merely requires the party requesting fees to assist in the "interpretation *or* implementation" of the statute. *Id.* (emphasis added) Satisfaction of either prong thus provides the requisite contribution to the goals of the Act.

*Ass'n v. D.C. Bd. of Elections & Ethics,* 168 F.3d 525, 528 (D.C.Cir.1999) ("[W]e have long held [that] the subsequent mootness of a case does not necessarily alter the plaintiffs' status as prevailing parties."). Plaintiffs are thus entitled to attorneys' fees if the TRO and September 3, 1998 injunction provided "some degree of success on the merits." *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 3282, 77 L.Ed.2d 938 (1983). To do so, the interim injunction must have furthered the interpretation or implementation of the ESA. *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior,* 748 F.2d 523, 525 (9th Cir.1984).

### A. Success on the Merits

██ Plaintiffs brought this suit to prevent the irreversible or irretrievable commitment of resources by defendants pending issuance of an ITP. *See* Compl. ¶ 2 & Prayer for Relief ¶ 2; *see also* Rep. Tr. (Sept. 3, 1998) at 39:18–21 ("[B]y bringing this suit plaintiffs are simply trying to enforce the law so that there's ... resources out there ... for the agency to make its determination upon."). The temporary restraining order and preliminary injunction afforded plaintiffs this relief. Thus, plaintiffs have achieved some success in this litigation.

██ Both a restraining order and a preliminary injunction support a fee award if they do not merely preserve the status quo. *See, e.g., LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1161 (9th Cir.2000) ("It is clear that the TRO in this case did more than

preserve the status quo"); *Williams v. Alioto,* 625 F.2d 845, 847–48 (9th Cir.1980) ("[B]y obtaining the preliminary injunction appellees 'prevailed on the merits of at least some of (their) claims.'") (internal quotation omitted); *Dahlem v. Board of Educ., of Denver Pub. Sch.,* 901 F.2d 1508, 1511 (10th Cir.1990) ("[A] preliminary injunction is considered a decision on the merits so long as it 'represent[s] an unambiguous indication of probable success on the merits, and not merely a maintenance of the status quo.'") (internal quotation omitted). Thus, in *LSO, Ltd.,* the court awarded fees to plaintiffs because the TRO "altered" the relationship between the parties by "prevent[ing] the Defendants from further interfering with the Art Exhibition." *Id.* The restraining order in this action likewise altered the relationship between the parties by enjoining logging activities that had already begun. *See* Pls.' Renewed Mot., Exh. B ("TRO," Aug. 14, 1998) at 3:25.[5]

In granting the TRO, Judge Henderson considered the merits of this action. Although a restraining order may be awarded under the ESA if plaintiff demonstrates that "a violation of the ESA is 'at least likely,'" *National Wildlife Fed'n v. Burlington N. RR.,* 23 F.3d 1508, 1510 (9th Cir.1994), Judge Henderson applied a stricter test, finding plaintiffs had demonstrated that they would "probably prevail" on the merits. TRO at 3:20–21. This determination necessarily required Judge Henderson to assess the merits of plaintiffs' complaint.[6] Moreover, Judge

---

5. Defendants now contend that the injunctive relief merely preserved the status quo. Defs.' Renewed Opp'n at 11:9–11. Notably, defendants earlier defined the status quo as "harvesting timber without taking." Rep. Tr. (Sept. 3, 1998) at 51:3–9. By enjoining all timber harvesting, the TRO and preliminary injunction undeniably altered defendants' position.

6. Defendants challenge that a TRO is not a decision on the merits, but merely an anticipation of such decision. Defs.' Renewed Opp'n at 13:10–13. To the contrary, a court's consideration of "probable success on the merits" constitutes a decision on the merits where, as here, it alters the status quo. *See Dahlem v. Board of Educ. of Denver Pub. Sch.,* 901 F.2d 1508, 1511 (10th Cir.1990) (considering a preliminary injunction).

Henderson issued a written order finding that section 7(d) of the ESA applies to private land and is triggered by both formal and informal consultation. TRO at 4:1–5:6 ("Section 7(d) does not require the initiation of 'formal consultation,' but rather only the initiation of some consultation by the agencies.... Thus, the Court finds that the requirements of section 7(d) have been triggered.").

■ Although the March 15 order memorialized the preliminary injunction, an injunction need not be fully adjudicated to be enforceable. Rather, an injunction may be effective absent written findings and conclusions. *See, e.g., Dahlem,* 901 F.2d at 1512 (noting that "'relief on the merits' may fall short of 'a formal judgment'") (citation omitted); *Clarkson Co. Ltd. v. Shaheen,* 544 F.2d 624, 632–33 (2d Cir. 1976) (informal injunctions enforceable); *Bethlehem Mines Corp. v. United Mine Workers,* 476 F.2d 860, 862 (3d Cir.1973) ("Although the Federal Rules of Civil Procedure Provide [sic] for the filing of findings of fact and conclusions of law in support of an order granting a preliminary injunction, a failure to do so simultaneously with the decree does not deprive a court of *jurisdiction* and of power to adjudge in civil contempt those violating such order.") (emphasis in original); 11A Wright, Miller & Kane, Federal Practice and Procedure § 2955 (2d ed.1995) (same); *see also Davis v. City and County of San Francisco,* 890 F.2d 1438, 1450 (9th Cir.1989) ("[The Ninth] Circuit ... has not taken a rigid approach to Rule 65(d)."). Thus, the fact that the September 3 order was not fully adjudicated is not dispositive. The bench order supports a fee award because it materially altered the "substantial rights of the parties." *Dahlem,* 901 F.2d at 1512.

To be effective, a preliminary injunction and temporary restraining order must merely "set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained ..." Fed. R. Civ. Pro. 65(d). These requirements are intended to "prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974). The restraining order and September 3 injunction clearly elaborate the reasons for their issuance. *See* Rep. Tr. (Sept. 3, 1998) at 66:23–68:21 (rejecting defendants' construction of section 7(d) as "render[ing] the statute meaningless"). Moreover, the orders describe the acts sought to be restrained. *See* TRO at 5:9–12 (enjoining all logging activities within the boundaries of the listed Timber Harvest Plans); Rep. Tr. (Sept. 3, 1998) at 68:24–69:5, 76:19–22 (converting the terms of the TRO into a preliminary injunction). That the September 3 order referenced the preexisting TRO does not render it unenforceable. *Davis,* 890 F.2d at 1450–51 (discounting this requirement where defendants have adequate notice of the enjoined acts). Defendants knew precisely what conduct was proscribed after September 3, 1998. The orders could be obeyed easily and enforced effectively.

Notably, defendants earlier recognized the legitimacy of the September 3 order. *See, e.g.,* Notice of Appeal at 2:2 (appealing the "Preliminary Injunction issued by the Court on September 3, 1998"); Stipulation and Order Modifying Interim Prelim. Inj., Nov. 9, 1998 at 2:5–6 ("On September 3, 1998, the Court granted Plaintiffs' motion for a preliminary injunction on an interim basis") & 4:5–6 (acknowledging that "the interim Preliminary Injunction remains in effect according to its terms"). The court has likewise clarified that the September 3 order constituted a prelimi-

nary injunction. *See* Order of March 15 at 2:4 (noting that the "court converted the temporary restraining order into a preliminary injunction" on September 3, 1998). Thus, the preliminary injunction was effective on September 3, 1998. The March 15 order simply reaffirmed this earlier ruling. Plaintiffs benefitted from the September 3 injunction, thereby achieving success on the merits of the case.

### B. *Interpretation or Implementation of the Act*

Having determined that the TRO and preliminary injunction afforded plaintiffs some success on the merits, plaintiffs may recover attorneys' fees under the ESA if they substantially contributed to the goals of the Act by facilitating its interpretation or implementation. *Carson–Truckee*, 748 F.2d at 525. The court earlier determined that plaintiffs satisfied this test. Fee Order at 6:20–7:20. This conclusion remains unchanged by the Ninth Circuit decision. The Ninth Circuit merely vacated the March 15 order as moot, it did not vacate the preliminary injunction on the merits. The gains identified in the previous attorneys' fee order were already secured by the September 3 preliminary injunction.

Plaintiffs instituted this action to prevent PALCO from irreversibly committing resources during the time when the services were consulting about PALCO's Incidental Take Permit ("ITP"). Plaintiffs sought to keep PALCO from logging in the three Timber Harvest Plan ("THP") areas and from retrieving felled logs. The preliminary injunction achieved precisely these results.

Plaintiffs' efforts resulted in both a temporary restraining order and a preliminary injunction establishing the application of section 7(d) of the ESA to private ITP applications as well as clarification that section 7(d) was triggered by informal consultation. *See* TRO at 4:23–25. ("Section 7(d) does not require the initiation of 'formal consultation,' but rather only the initiation of some consultation by the agencies."); Rep. Tr. (Sept. 3, 1998) at 66–68 (same). These findings were reached at the conclusion of the first hearing on plaintiffs' motion for preliminary injunction and are consequently unaffected by the Ninth Circuit decision. In this way, plaintiffs' efforts furthered the interpretation of the Act.

Plaintiffs likewise facilitated the implementation of the ESA.[7] Logging had already begun on all three THPs when plaintiffs filed this action. The TRO and preliminary injunction prevented additional logging while the Services were reviewing the ITP and Habitat Conservation Plan ("HCP"). By preventing defendants from making an irreversible or irretrievable commitment of resources pending issuance of the ITP, plaintiffs preserved the full panoply of reasonable and prudent alternatives being considered by the Services in the preparation of their biological opinion. *See* 16 U.S.C. § 1536(d); *see also* 50 C.F.R. §§ 402.09 & 450.01 (defining "irreversible and irretrievable commitment of resources"). Thus, EPIC and Sierra Club's efforts secured time in which the Services could fully review and modify the ITP and the HCP. The injunction also

---

**7.** Defendants insist a fee award will discourage regulated industries from developing HCPs or applying for ITPs, *hindering* implementation of the ESA. Defs.' Renewed Opp'n at 19:21–20:3. The court rejects this argument. It is by no means clear that a fee award will lead to this result. *Cf. Buckhannon Bd. & Care Home, Inc. v. West Virginia*

*Dep't of Health & Human Res.*, 532 U.S. 598, 608, 121 S.Ct. 1835, 1842, 149 L.Ed.2d 855 (2001) (dismissing fears that "rejection of the 'catalyst theory' will deter plaintiffs with meritorious but expensive cases from bringing suit" as "entirely speculative and unsupported by any empirical evidence.").

gave the state court time to review two of PALCO's THPs at issue in this case. While PALCO argues that plaintiffs' efforts merely duplicated those of the government agencies, Defs.' Renewed Opp'n at 17 n. 7, this court does not find them to be duplicative. If plaintiffs had not acted, PALCO could have logged and removed already felled logs.

Whether or not plaintiffs actually prevailed on every issue, it is clear that they essentially achieved the results they sought. *See* Compl. ¶ 2 & Prayer for Relief ¶ 2. In doing so, they advanced the interpretation and implementation of the ESA. Accordingly, plaintiffs satisfy the test for attorneys' fees under the Act. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694, 103 S.Ct. 3274, 3282, 77 L.Ed.2d 938 (1983); *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523, 525 (9th Cir.1984).

## C. *Applicability of Buckhannon to the ESA*

Defendants contend that the recent Supreme Court decision, *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), precludes plaintiffs from recovering attorneys' fees. Defendants are mistaken. First, *Buckhannon* does not apply to the ESA. Second, even assuming *Buckhannon* applies generally to suits brought under the ESA, it does not apply to this action. Thus, plaintiffs' eligibility for attorneys' fees is unaffected by the Court's decision.

The *Buckhannon* Court disallowed attorneys' fees under the Fair Housing Amendments Act (FHAA) and Americans with Disabilities Act (ADA) absent a material alteration of the legal relationship of the parties. The Court determined that the requisite change may not occur voluntarily (i.e., via the catalyst theory), but

must result from a court order. *Id.* at 604–605, 121 S.Ct. at 1840.

Admittedly, *Buckhannon* is not limited to the FHAA and ADA, but extends to civil rights statutes providing attorneys' fees to prevailing parties. *See id.* at 600, 121 S.Ct. at 1838 (referring to "[n]umerous federal statutes" with similar provisions). The Ninth Circuit likewise extended *Buckhannon* to the Equal Access to Justice Act ("EAJA"). *See Perez–Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir.2002) ("[*Buckhannon* ] sweeps more broadly and its reasoning is persuasively applicable to an award of attorney's fees under the EAJA.").

While *Buckhannon's* applicability is broad, it is not universal. Both the EAJA and the civil rights statutes identified in *Buckhannon* provide for attorneys' fees to prevailing parties. *See, e.g.,* EAJA, 28 U.S.C. § 2412(d)(1)(A) ("[A] court shall award to a prevailing party ... fees"); FHAA, 42 U.S.C. § 3613(c)(2) ("The court ... may allow the prevailing party ... a reasonable attorney's fee and costs"); ADA, 42 U.S.C. § 12205 (same); *see also Perez–Arellano*, 279 F.3d at 794 (highlighting the use of "nearly identical fee-shifting provisions" and noting that the "[FHAA, ADA, and EAJA] use the identical term, 'prevailing party.' "). In contrast, the ESA does not limit fees to prevailing parties, but gives courts broad discretion to award attorneys' fees "whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). This is a "less stringent standard" for attorneys' fees and reflects Congress' intent "to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties." *Ruckelshaus*, 463 U.S. at 688, 103 S.Ct. 3274. For this reason, several courts have declined to extend *Buckhannon* to the ESA. *See Center for Biol. Diversity v. Norton*, 262 F.3d 1077, 1080 n. 2 (10th Cir.2001) (emphasizing the absence

of an express requirement "that the party seeking attorney's fees be the 'prevailing party'" and finding that "the basis of the Court's conclusion in *Buckhannon* is not applicable [to the ESA]"); *Southwest Center for Biol. Diversity v. Carroll,* 182 F.Supp.2d 944, 947 (C.D.Cal.2001) ("Because the 'whenever … appropriate' language of the ESA is distinguishable on its face from the 'prevailing party' language of the civil rights statutes, this Court is reluctant to extend the *Buckhannon* holding to the fee provisions of the ESA.").[8] This court likewise distinguishes prevailing party statutes and limits *Buckhannon's* applicability.

Assuming *arguendo* that *Buckhannon* extends to the ESA, it does not affect plaintiffs' fee eligibility. *Buckhannon* merely precludes a fee award absent a "court-ordered 'chang[e][in] the legal relationship between [the parties].'" *Buckhannon,* 532 U.S. at 604, 121 S.Ct. at 1840 (internal quotation omitted). While the Court highlights final judgments and court-ordered consent decrees as sufficient changes, these examples are illustrative not exhaustive. The Court merely demands a judicially sanctioned change rather than a voluntary agreement. *Id.* at 598–99, 121 S.Ct. at 1837 (requiring a "judicially sanctioned change in the legal relationship of the parties" and a "judicial imprimatur"), 532 U.S. at 604 n. 7, 121 S.Ct. at 1840 n. 7 (emphasizing the "judicial approval and oversight involved in consent decrees"). Thus, any court-ordered resolution will suffice.

Defendants did not stop logging voluntarily, but as a result of the court-issued TRO and September 3 preliminary injunction. *See Grano v. Barry,* 783 F.2d 1104, 1110–1111 ("[A] defendant acting in accordance with a court order cannot be presumed to be acting gratuitously."). Even absent a final written order, defendants could have been held in contempt had they continued logging in contravention of the court order. Thus, plaintiffs' efforts resulted in a court-ordered change in the relationship between the parties, supporting compensation under *Buckhannon.* This conclusion is consistent with the Ninth Circuit's most recent pronouncement on *Buckhannon* where it held that a preliminary injunction carries "all the 'judicial imprimatur' necessary to satisfy Buckhannon". *Watson v. County of Riverside,* 300 F.3d 1092, 1096 (9th Cir.2002).

## II. Calculation of the Fee Award

### A. Reasonable Hours

■ After a thorough review of the declarations and exhibits submitted by plaintiffs, the court finds that the number of hours expended on the merits of this case and the fee applications are reasonable. Plaintiffs' attorneys spent an enormous amount of time on this action; however, these hours were necessitated by the complexities of the factual situation and the questions of law presented. Moreover, because the September 3 injunction was conditional, *see* Rep. Tr. (Sept. 3, 1998) at 68:24–69:5, 76:19–22 (converting the terms of the TRO into a preliminary injunction that "will remain in effect until [the court has] had a chance to revisit this testimony"), plaintiffs' efforts since September 3 are compensable. Absent this commitment, the court could have adopted defendants' construction of the ESA and terminated the injunction.

■ A district court must base a finding of reasonable hours on evidence and sound documentation. "The fee appli-

---

**8.** Defendants challenge the precedential value of *Southwest Center for Biological Diversity,* Defs.' Renewed Opp'n at 10 n. 4, because it is being appealed. Mere review by the Ninth Circuit, however, does not constitute reversal. While an order from the Central District is not binding, its reasoning is persuasive and the court adopts it accordingly.

cant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian,* 987 F.2d 1392, 1397 (9th Cir.1992) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). The court may adjust these hours downward if it believes the documentation to be inadequate, if the hours were duplicative, or if the hours were either excessive or unnecessary. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986), *amended by* 808 F.2d 1373 (1987).

The declarations submitted by plaintiffs' counsel chronicle the extensive research and briefing that led to the successful resolution of this case. The declarations demonstrate that the long hours spent on research, court filings and witness preparation were necessary to achieve the swift relief necessitated by PALCO's intent to log or remove downed logs. Plaintiffs' declarations and exhibits support their claim that the hours spent on the case were reasonable in light of the complexities involved.

 Once the fee applicant has provided evidence supporting the hours worked, "[t]he party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates,* 987 F.2d at 1397–98 (citing *Blum v. Stenson,* 465 U.S. 886, 892 n. 5, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The court received no declarations or other evidence demonstrating that plaintiffs' attorneys worked an unreasonable number of hours or misrepresented the complexities of the case. To the contrary, defendants have stated that they do not "question the reasonableness of the time [plaintiffs] billed." Defs.' Renewed Opp'n at 1:16–17.

PALCO contends that if this court intends to award attorneys' fees, plaintiffs' attorneys should not be awarded the full fee request. PALCO argues that work done by plaintiffs' counsel after the September 3, 1998 injunction should not be compensated because the substantive rights of the parties were not affected by work undertaken after that date. In the alternative, PALCO suggests plaintiffs should not be compensated for work done after November 20, 1998 when formal consultation commenced.

However, given the fact that the relief obtained by plaintiffs furthered the implementation and interpretation of the ESA, this court finds it inappropriate to create cut-off dates after which plaintiffs should not be compensated. The action taken as a whole furthered the goals of the ESA and therefore plaintiffs are entitled to attorneys' fees for the entire action. Moreover, PALCO challenged plaintiffs' construction of the ESA long after either the September 3 injunction or the initiation of formal consultation. *See, e.g.,* Defs.' Opp'n to Mot. for Partial Summ. J. (Feb. 12, 1999) at 18:8–10 ("[T]he Court should rule that, as a matter of law, section 7(a)(2) and 7(d) do not apply to a section 10 permit application."). Plaintiffs understandably felt compelled to respond to these arguments and should be compensated for their efforts, notwithstanding the ultimate mooting of the subsequent orders.

Although PALCO offers no probative evidence that the efforts of plaintiffs' counsel were duplicative or frivolous, plaintiffs did delete at least 25.95 hours of work expended on the merits of the case from the lodestar calculation, resulting in a reduction of $7,370 from the total lodestar.[9] Plaintiffs also deleted all hours associated

9. Only three of the attorneys specifically note that they have reduced their hours. Duggan

with their response to the Order to Show Cause. This reduction eliminated an additional 23.55 hours, resulting in a reduction of $5871.75 from the total lodestar. Gaffney Dec. (Dec. 19, 2001) ¶¶ 3–10. Plaintiffs have further demonstrated billing judgment in the hours claimed preparing both the original and renewed motion for attorneys' fees. Pearl Supp. Dec. ¶ 2 (Feb. 25, 2002) (eliminating billable hours for Duggan and Cummings' efforts on the Reply); Pearl Supp. Dec. ¶ 2 (Aug. 9, 1999) (eliminating billable hours for Gaffney and Mueller's efforts on the Reply). Since the remaining hours were reasonably expended, EPIC and Sierra Club's counsel shall be compensated for all hours claimed in the fee application.

### B. *Reasonable Hourly Rate*

 The last issue before the court is whether the hourly rates requested by plaintiffs, ranging from $145.00 to $400.00 an hour, are reasonable.[10] Determining a reasonable hourly rate is a critical inquiry. *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 (9th Cir.1987). The court must consider several factors including the experience, skill and reputation of the applicant. *Chalmers*, 796 F.2d at 1210. The court must look to the prevailing rate in the community for similar work performed by attorneys of comparable skill, experience and reputation; it may not refer to the rates actually charged to the prevailing party. *Id.* at 1210–11. It is the applicant's burden to produce evidence, other than the declarations of interested counsel,

that "the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan*, 815 F.2d at 1263. In addition, in figuring a reasonable fee, the court should consider the outcome of the action, the customary fees, whether a contingent fee arrangement is involved and the novelty or difficulty of the issues presented. *Chalmers*, 796 F.2d at 1211 (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *cert. denied*, 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976); *Hamner v. Rios*, 769 F.2d 1404, 1407–09 (9th Cir.1985)).

 Plaintiffs have provided declarations from disinterested attorneys attesting to the complexity of environmental litigation; the skill required to litigate issues similar to those in this case; the experience, ability and quality of work of plaintiffs' counsel; and the rates charged by attorneys in San Francisco with similar expertise and experience. *See* Pearl Dec. (Dec. 19, 2001); Brecher Dec. (June 21, 1999) ¶ 6; Pearl Dec. (June 21, 1999); Rosen Dec. (June 21, 1999). These declarations and the declarations of plaintiffs' attorneys all support the reasonableness of the hourly rates requested.

Defendants respond to this evidence with arguments that plaintiffs are not entitled to fees because they did not achieve sufficient success on the merits. Defendants do not submit any declarations or exhibits to counter plaintiffs' evidence that

---

eliminated 10 hours for a savings of $2,750. *See* Duggan Dec. (June 21, 1999) ¶ 15. Gaffney cut 8.8 hours, saving $1,760. Gaffney Dec. (June 21, 1999), Exh. A. Pearl eliminated 7.15 hours, saving $2,860. Pearl Supp. Dec. (Feb. 25, 2002) ¶ 2. The other counsel simply state that they have eliminated duplicative hours. *See* Cummings Dec. (June 21, 1999) ¶ 8, Mueller Dec. (June 21, 1999) ¶ 12. PALCO has not challenged these hours as unreasonable.

**10.** Plaintiffs' counsel Brendan Cummings charged $145 an hour, Sharon E. Duggan charged $225 per hour, Brian Gaffney charged $200 an hour, Tara Mueller charged $210 an hour, and Richard Pearl charged $350 an hour for the original award. Gaffney and Pearl have since increased their hourly rates to $275 and $400 respectively.

the requested rates are reasonable. In fact, "PALCO does not challenge the reasonableness of the hourly rates charged by Plaintiffs' lawyers." Defs.' Renewed Opp'n at 1:15–16. The court therefore finds that the hourly rates requested by plaintiffs are reasonable.

## C. *Corrected Lodestar*

In their motion, plaintiffs submit a revised lodestar request. This request reflects (1) a modified original award, eliminating hours associated with plaintiffs' response to the Order to Show Cause; (2) post-judgment interest on that award; and (3) fees and costs associated with the renewed motion. The following chart represents the hours and corresponding fee award of plaintiffs' counsel based on the documentation submitted:

### 1. *Original Award, After Reductions*

| Attorney | Hours | Rate | Total for Fees | Costs Submitted |
|----------|-------|------|----------------|-----------------|
| Sharon Duggan | 244.45 | $275 | $ 67,223.75 | $1,459.98 |
| Brian Gaffney | 284.30 | $200 | $ 56,860.00 | $1,020.80 + $5,528.28 |
| Tara Mueller | 187.30 | $210 | $ 39,333.00 | $ 272.08 |
| Brendan Cummings | 219.20 | $145 | $ 31,784.00 | $ 571.17 |
| Richard Pearl | 62.35 | $350 | $ 21,822.50 | $ 233.11 |
| **SUBTOTAL** | | | $217,023.25 | $9,085.42 |

### 2. *Interest on Original Award*

Plaintiffs further request interest on the original award at 5.2% from August 20, 1999, the date of the original judgment. Entitlement to post-judgment interest on the fee award is well-established. *See Perkins v. Standard Oil Co.,* 487 F.2d 672, 674–76 (9th Cir.1973). Such an award encourages private citizen enforcement of the ESA. *Hobbs v. Director, Office of Workers Comp. Programs,* 820 F.2d 1528 (9th Cir. 1987) (endorsing interest on a fee award as a necessary means to "encourag[e] private enforcement of the statutes themselves"). This increases the original award by $31,342.83.

### 3. *Fees for the Renewed Motion for Attorneys' Fees*

 Time spent completing the fee petition is compensable. *See Thompson v. Gomez,* 45 F.3d 1365 (9th Cir.1995); *Gates v. Rowland,* 39 F.3d 1439 (9th Cir.1994). The following chart reflects the hours expended by plaintiffs' counsel preparing the Renewed Motion for Attorneys' Fees and corresponding Reply:

| Attorney | Hours | Rate | Total for Fees | Costs Submitted |
|----------|-------|------|----------------|-----------------|
| Brian Gaffney | 32.80 | 275 | $ 9,020.00 | |
| Richard M. Pearl | 73.30 | 400 | $29,320.00 | $155.55 |
| **SUBTOTAL** | | | $38,340.00 | $155.55 |

Plaintiffs thus request a total fee award of $295,797.05. Plaintiffs are entitled to attorneys' fees under the ESA because they have advanced the goals of the Act. Plaintiffs' lodestar is reasonable given the complexity of the litigation and the skill of their attorneys.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that plaintiffs' ap-

plication for attorneys' fees and costs is GRANTED in the amount $295,797.05. Defendants are hereby ordered to pay the above amount to plaintiffs within sixty (60) days of the date of this order.

IT IS SO ORDERED.