CENTER FOR BIOLOGICAL DIVERSITY, et al, Plaintiffs,

v.

P Lynn SCARLETT, in her official capacity as Acting Secretary of the Interior, and H Dale Hall, in his official capacity as Director, United States Fish and Wildlife Service, Defendants,

and

American Forest & Paper Association, California Forestry Association, and Sierra Pacific Industries, Defendant–Intervenors.

No. C 04 1861 VRW.

United States District Court, N.D. California.

Sept. 30, 2006.

Gregory C. Loarie, Deborah S. Reames, Earthjustice Oakland Regional Office, Oakland, CA, for Plaintiffs.

Kristen Byrnes Floom, United States Department of Justice, Washington, DC, for Defendants.

David E. Martinek, Dun & Martinek LLP, Eureka, CA, J. Michael Klise, Thomas R. Lundquist, Crowell & Moring LLP, Washington, DC, for Defendant–Intervenors.

## ORDER

WALKER, Chief Judge.

Plaintiffs Center for Biological Diversity, Sierra Nevada Forest Protection Campaign, Sierra Club, John Muir Project, Natural Resources Defense Council and Defenders of Wildlife move for an award of attorney fees and costs pursuant to § 11(g)(4) of the Endangered Species Act (ESA), 16 USC § 1540(g)(4), in connection with their efforts to have the California spotted owl listed as endangered. Doc # 78. For reasons explained below, the Center's motion is DENIED.

## I

Plaintiffs initially petitioned the Fish and Wildlife Service (FWS) to list the California spotted owl as an endangered species on April 3, 2000. Pursuant to § 4(b)(3)(A) of the ESA, FWS made a 90–day finding that the petition presented substantial information that listing may be warranted and initiated a status review. 65 Fed Reg 60605. Plaintiffs filed a complaint in this court on July 31, 2001, to compel defendants to comply with certain listing provisions of the ESA. Judge Conti ordered defendants to make a final determination whether the California spotted owl should be listed as threatened or endangered by February 10, 2003. *Center for Biological Diversity v. Norton,* 208 F Supp 2d 1044, 1051 (N.D.Cal.2002). On February 14, 2003, FWS announced its 12–month finding that listing the California spotted owl as either endangered or threatened was not warranted. 68 Fed Reg 7580.

The February 2003 finding was challenged by the present lawsuit, filed on May 11, 2004. Doc # 1 (Compl). The complaint alleged that FWS failed to include in its calculus several factors required to be considered by the ESA. Relevant for present purposes, the complaint alleged that FWS failed to base its finding on the best scientific and commercial data available as required by § 4(a)(1)(A), 16 USC § 1533(a)(1)(A), because FWS "improperly considered only those threats that would be reasonably foreseeable if the National Forests in the Sierra Nevada were managed in accordance with the original [Sierra Nevada Forest Plan Amendment (SNFA) ]," Compl ¶ 33(B), that regulated logging, wildfire prevention, grazing and other activities in the eleven national forests in the Sierra Nevada range. *Id.* ¶ 22. According to the complaint, FWS should have considered that the United States Forest Service was in the process of revising the SNFPA in a manner that would have greater impact on the spotted owl habitat. *Id.* ¶ 33(B).

The complaint further alleges that the updated SNFPA "allows three times more logging than the original plan and allows for considerable increases in grazing, off-road vehicle use and other destructive activities throughout the Sierra Nevada." *Id.* ¶ 25; see also Final Supplemental Environmental Impact Statement and Record of Decision, available at *htt p://www.fs.fed. us/r5/snfpa/final-seis/rod/pdfs/snfpa-rod. pdf* (visited Oct 2, 2006). The SNFPA modifications, however, were not announced until January 2004 and did not go into effect until March 2004—more than one year after FWS announced its original 12 month finding. *Id.*

On June 29, 2004, more than a month after filing the lawsuit challenging the original FWS finding, plaintiffs informed FWS that they were in the process of

drafting an updated listing petition in light of the SNFPA revisions. Plaintiffs indicated they would agree to settle the action if FWS would agree to make a 12–month finding on the petition pursuant to a schedule enforceable by the court. Doc # 82 (Loarie Decl) ¶ 12. FWS replied that it would not consider such a settlement unless and until plaintiffs actually filed their updated petition. *Id.*; see also *id.*, Ex 2.

Plaintiffs filed a new petition on September 1, 2004, almost four months after filing this lawsuit challenging the FWS prior decisions. *Id.* ¶ 13. The petition requested that the California spotted owl be listed in light of the 2004 revisions to the SNFPA. *Id.* Defendants conceded that FWS is required by statute, 16 USC § 1533(b)(3)(A), to review the Center's new petition by September 2005. *Id.* Despite defendants' requirement to review the new petition, defendants stated:

> [d]uring [Fiscal Year (FY)] 2005 and through December of FY 2006, [defendants' Sacramento office] is required by court order to develop and submit critical habitat or listing packages for 25 species * * * the court ordered listing requirements will consume [defendant's] listing program through December 2006.

Doc # 58 (Stevens Decl) ¶ 9.

Additionally, defendants stated they would "not be able to address [the Center's] petition to list the California spotted owl at this time." Doc # 56, Attachment.

Following the new petition, defendants moved to vacate the settlement conference scheduled for October 28, 2004, because "settlement discussions between the parties would not presently be productive * * *." Doc # 19 at 2. Meanwhile, the Center supported the settlement conference:

> [b]ecause the [defendants'] commitment to act on the new petition would ensure that the agency reconsiders its decision

that listing the owl is not warranted-likely before it would as a result of a remand in this case-the Center has proposed to settle this suit in exchange for such a commitment, thereby conserving considerable resource expenditure by the parties and the court.

Doc # 21 at 3. The Center continuously supported the settlement of the litigation: (1) in the Center's September 16, 2004 opposition to defendants' motion to vacate the settlement conference (Doc # 21 at 1); (2) in the Center's October 14, 2004 written settlement offer; (3) at the October 28, 2004 settlement conference before Magistrate Judge Zimmerman and (4) in the Center's November 12, 2004 summary judgment motion. Doc # 82 ¶¶ 14–20.

On March 8, 2005, with cross-motions for summary judgment fully briefed and additional information presented in the new petition, the court ordered the parties to show cause why the court should or should not stay the case. Doc # 59. Defendants stated "[i]n response to the Court's Order to Show Cause, FWS has evaluated its ability to * * * review [the petition] within a reasonable time frame, such that a stay of this action would be appropriate." Doc # 62 at 8.

On March 17, 2005, the court stayed the case pending a 90–day update on defendants' status for review of the Center's new petition. Doc # 64. After the stay of case was issued, the defendants' "Candidate Notice of Review" listed the actions it would undertake during the fiscal year of 2005 and stated: "that [the] work on the 90–day finding for the owl is being done in relation to litigation." Doc # 79 at 4, quoting 70 Fed Reg 24,870,24,890 (May 11, 2005).

Following defendants' review and in a timely manner, on June 21, 2005, defendants published a finding pursuant to

§ 4(b)(3)(A) of the ESA, 16 USC § 1533(b)(3)(A). Defendants concluded that the new petition presented substantial scientific or commercial information that listing the owl as threatened or endangered may be warranted. Doc # 75. Accordingly, defendants began a new 12–month study of the owl's status pursuant to § 4(b)(3)(A). *Id.* The action was dismissed per the stipulation of the parties on July 25, 2005. Doc # 75.

The Center's motion for attorneys fees and costs was timely filed on September 30, 2005. Doc # 79. Meanwhile, on May 24, 2006, FWS announced its 12–month finding that listing the California spotted owl as endangered or threatened was not warranted. 71 Fed Reg 29886 (May 24, 2006).

## II

The ESA provides that courts "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 USC § 1540(g)(4). In *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983), the Supreme Court explained (in the context of the similarly worded fee-shifting provision of the Clean Air Act) that this language "was meant to expand the class of parties eligible for fee awards from prevailing parties to partially prevailing parties—parties achieving some success, even if not major success." *Id.* at 688, 103 S.Ct. 3274; see also *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior,* 748 F.2d 523 (9th Cir.1984).

Subsequent decisions of the Supreme Court, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), and the Ninth Circuit, *Marbled Murrelet v. Babbitt,* 182 F.3d 1091 (9th Cir.1999),

appear to have caused some confusion among lower courts within this circuit regarding the standard applicable to fee claims by ESA plaintiffs, compare *Klamath Siskiyou Wildlands Ctr. v. Babbitt,* 105 F Supp 2d 1132, 1141–42 (D.Or.2000) (concluding that *Carson–Truckee's* requirement that an ESA plaintiff have substantially contributed to the goals of the ESA did not survive *Delaware Valley* and *Marbled Murrelet* ), with *Environmental Protection Information Ctr. v. Pacific Lumber Co.,* 229 F.Supp.2d 993, 998–99 & n. 3 (N.D.Cal.2002) (reaching the opposite conclusion). These uncertainties, however, were apparently resolved by the Ninth Circuit in *Association of California Water Agencies v. Evans,* 386 F.3d 879 (9th Cir. 2004) ("*ACWA* ").

*ACWA* upheld the application of a catalyst theory that awarded attorney fees when plaintiffs obtained the relief sought through a voluntary change in the defendants behavior instead of success on the merits. *Id.* at 885. " 'When, as here, a plaintiff does not win a final judgment on the merits, a two-part test determines whether the plaintiff nonetheless prevailed for the purpose of receiving attorney's fees.' " *Id.* at 885–86 (quoting *Greater LA Council on Deafness v. Community Television,* 813 F.2d 217, 219 (9th Cir.1987)). The catalyst theory requires the court to award attorney fees if (1) the goals of the lawsuit were realized and (2) the result was required by law and not a gratuitous act of the defendant. *Id.* at 885–86 n. 3.

First, the court ascertains the goals of the lawsuit and whether those goals were realized. *Id.* at 886. "Plaintiffs need only have received some of the benefits they sought in the suit." *Id.* at 886. The Ninth Circuit further explained this inquiry into a lawsuit's goals when it upheld an award of attorney fees following a success-

ful settlement agreement. *Idaho Conservation League, Inc. v. Russell,* 946 F.2d 717 (9th Cir.1991).

> To determine whether the relief sought was obtained, courts look at what the lawsuit originally sought to accomplish and what relief was actually obtained. It is an inquiry into the practical outcome realized. Because of this suit, plaintiffs obtained what they wanted.

*Id.* at 719. There must be a clear causal relationship between the litigation and the benefit realized. *ACWA,* 386 F.3d at 886. The first prong itself involves a two step process:

> The relief sought should be compared with the relief actually obtained and, if it is of the same general type, an assessment should be made whether there was a causal connection between the relief obtained and the lawsuit.

*Oregon Natural Resource Council v. Turner,* 863 F.Supp. 1277, 1281 (D.Or.1994).

Second, the court must determine whether the benefit achieved was required by law and not a gratuitous act of the defendant. *Id.* at 886 n. 3. Because the following section concludes that the goals of the legislation were not realized, there is no need to discuss whether any benefit achieved was required by law.

### III

■ The primary goal of this lawsuit was "to compel FWS to add the California spotted owl to the list of endangered and threatened species and to designate its critical habitat." Compl ¶ 1. Specifically, plaintiffs sought (1) a judicial finding that defendants violated § 4 of the ESA, 16 USC § 1533, and the APA, 5 USC § 760, by finding that the California spotted owl was not endangered or threatened and (2) a judicial order to list the California spotted owl as endangered or threatened and designate its critical habitat. *Id.* at 13.

The relief sought was to overturn FWS's February 2003 finding that the California spotted owl was not an endangered and threatened species and to obtain protected status for the owl. The relief actually obtained was timely consideration of plaintiffs September 2004 petition to review the owl's status in light of the SNFPA revisions. FWS granted the petition to review the owl's status, but the 12 month review ultimately resulted in another denial of protected status to the California spotted owl.

FWS' timely review of plaintiffs' petition to review the status of the California spotted owl was causally connected to this lawsuit. While FWS originally indicated the 90 day review would not be completed within the statutorily required deadline, plaintiffs obtained a finding more promptly through settlement negotiations.

The question before this court is whether the relief sought, reversing the February 2003 finding that denied the owl protected status, is of the same general type as the relief obtained, reviewing the owl's status based on the January 2004 SNFPA revisions and denying the owl protected status. Even the relaxed catalyst doctrine of fee shifting provides some limitations on when the court may recognize partial success. The plaintiffs must at least obtain some relief that resembles their original objectives. *Idaho Conservation League,* 946 F.2d at 719; *Oregon Natural Resource Council,* 863 F.Supp. at 1281.

In this instance, the plaintiffs have achieved a corollary goal that arose only after this litigation had begun. Plaintiffs filed their lawsuit in May 2004 to challenge a February 2003 FWS decision, but settled when FWS granted their September 2004 petition for another review of the owl's status. The acceptance of their petition for a review could not have been a goal of

this lawsuit because the complaint was filed more than four months before the petition for a rehearing. Doc # 82 ¶ 13.

Furthermore, plaintiffs had access to the updated SNFPA revisions in January 2004, roughly five months before filing suit. But instead of filing a petition for a rehearing based on new information, plaintiffs sued FWS to invalidate the February 2003 decision for not taking into account revisions that were announced in January 2004. The lawsuit did not request that FWS reconsider the owl's status based on new information within the SNFPA revisions, but requested a judicial determination that the February 2003 decision was inadequate as a matter of law. Doc # 1 at 13. Characterizing FWS decision to review the owl's status as a partial success would require recasting the goal of the litigation to include the timely consideration of a petition that had not yet been filed.

A brief consideration of the circumstances in which plaintiffs have received attorney fees for partial success under the catalyst theory will demonstrate that plaintiffs have failed to achieve even the minimal success necessary. In *Southwest Center for Biological Diversity v. Carroll*, 182 F Supp 2d 944 (C.D.Cal.2001), plaintiffs recovered because the Army Corps of Engineers filed a new biological assessment that responded to each of plaintiffs' concerns. Plaintiffs were seeking a new biological opinion from FWS because a previous 1989 opinion failed to consider the impact on two endangered species. *Id.* at 945. The relief sought in plaintiffs' complaint was "an order compelling the Corps to consult with FWS regarding the effects of the Seven Oaks Dam." *Id.* at 949. The relief obtained was the Corps' issuance of a new biological assessment "in an effort to reinitiate consultation with the FWS." *Id.* "The Corps' [new] biological assessment was largely consistent with plaintiffs' demands." *Id.* at 950.

In contrast, plaintiffs here filed a complaint that challenged the legality of a previous FWS opinion and made no effort to secure a new opinion. Despite an existing administrative procedure that allows plaintiffs to seek a rehearing without filing a complaint in federal court, plaintiffs chose to challenge the legal sufficiency of the February 2003 decision. The *Southwest Center* plaintiffs obtained the very relief they requested—that the Corps reinitiate consultation with FWS. *Id.* Plaintiffs before this court gave up the goal of this lawsuit, overturning the February 2003 decision, in order to achieve the goal of a subsequent administrative proceeding, obtaining a new decision pursuant to their petition.

In another case, Conservation Law Foundation ("CLF") recovered twenty percent of their legal fees for obtaining "judicially sanctioned changes in the timing obligations of the defendants in the administrative process." *Conservation Law Foundation v. Evans*, 2003 WL 1559940 at *1 (D.Mass.2003). CLF ultimately obtained the desired change in defendants' conduct through the administrative process, but obtained the favorable outcome sooner through judicial intervention imposing a mandatory timeline. *Id.* But the court reduced CLF's recovery to twenty percent of the requested attorney fees because of "reservation[s] with the massive deployment of resources when measured against the relatively modest result." Id at *2.

Plaintiffs before this court, while amassing significant legal expenses, have achieved significantly less than even CLF's modest result. Rather than using the judicial process to hasten an ongoing administrative process, plaintiffs delayed filing the administrative petition until four

months after filing a federal lawsuit. Plaintiffs then made the strategic decision to forgo the object of that suit in order to obtain a rehearing pursuant to their administrative petition. Attorney fees should not be awarded merely because plaintiffs settled for a rehearing that could have been achieved solely through the administrative petition process without litigation.

Possibly, FWS considered plaintiffs' petition in a more timely manner because of this litigation. But plaintiffs seek compensation for attorneys fees that were expended in filing a lawsuit and preparing a motion for summary judgment on legal issues that are completely unrelated to the petition for rehearing. Had plaintiffs sought enforcement of the statutorily required timeline *after* filing a petition for reconsideration, the court might be inclined to recognize partial success for timely consideration. The court cannot encourage or reward plaintiffs who use unrelated claims brought in federal court to leverage consideration of subsequent administrative petitions. Carts should not be run in front of horses.

Awarding attorney fees to parties who seek judicial relief before filing the proper administrative petition encourages unnecessary litigation. Plaintiffs must first file a petition through the administrative process before recovering attorney fees for partial success if that petition is granted. Rewarding plaintiffs with attorney fees for succeeding on an entirely different request with FWS would create incentives for plaintiffs to sue first and then pursue administrative petitions.

The goal of a lawsuit must be described in a manner consistent with the complaint. The complaint in this case sought remedies aimed at overturning the February 2003 FWS decision. Plaintiffs cannot retroactively re-characterize the goal of the lawsuit to include a rehearing that had not yet been requested.

## IV

Plaintiff's motion for attorney fees is DENIED because they failed to realize the goals of their lawsuit.

IT IS SO ORDERED.