BUILDING INDUSTRY LEGAL
DEFENSE FOUNDATION,
Plaintiff,

v.

Gale NORTON, et al. Defendants.

Nos. 01–CV–2101–IEG LAB,
01–CV–2145.

United States District Court,
S.D. California.

Feb. 28, 2003.

William E. Halle, Hewitt & O'Neil LLP, Irvine, CA, for Building Industry Legal Defense Foundation.

Mary Whittle, U.S. Department of Justice, Environment and Natural Resources Division, Washington, DC, for Gale Norton, Secretary of the Department of the Interior and United States Fish and Wildlife Service.

## ORDER DENYING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES

GONZALEZ, District Judge.

Presently before the Court is plaintiff Building Industry Legal Defense Foundation's ("BILD") motion for attorneys' fees and costs. BILD's costs have already been taxed against defendants by order of the Clerk of the Court on February 12, 2003. This Order will accordingly only address the portion of BILD's motion seeking attorneys' fees. For the reasons discussed below, the Court denies BILD's motion.

## BACKGROUND

On November 15, 2001, the Center for Biological Diversity and California Native Plant Society (collectively, "CBD") filed suit against Gale Norton, Secretary of the Interior, and the United Stated Fish and Wildlife Service ("FWS") in this Court alleging that the defendants violated the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA") by determining that designating critical habitat for eight plant species listed as endangered or threatened is not prudent. Shortly thereafter, on November 21, 2001, plaintiff BILD filed suit against the Secretary and FWS alleging the same substantive claims. Both complaints sought a declaratory judgment that the Secretary failed to perform a mandatory duty under the ESA and acted in a manner that was arbitrary, capricious, and otherwise not in accordance with law when she failed to designate critical habitat concurrent with the listing of the eight named species as either threatened or endangered. The complaints also sought injunctions ordering the Secretary to withdraw the not prudent determinations and issue new critical habitat designations for each of the eight plant species.

Magistrate Judge Larry Burns convened an Early Neutral Evaluation Conference on March 19, 2002, in which parties from both actions participated. At the conference, the parties agreed that (1) the critical habitat determinations for the eight plant species at issue in the cases would be remanded to the Service for reconsideration of its previous "not prudent" determinations; and (2) that the two cases should be consolidated. The only issue upon which the parties could not agree concerned the appropriate timeline for the issuance of new proposed and final critical habitat determinations on remand. Accordingly, Judge Burns ordered the parties to submit a joint stipulation for consolidation and remand, as well as briefs regarding the timeline.

Pursuant to Judge Burn's order, defendants submitted a brief on May 6, 2002 proposing a deadline for reconsideration of the critical habitat determinations. Plaintiffs CBD and BILD filed separate responses to defendants' brief on May 20, 2002. In its response brief, CBD contended that defendants' proposed timeline was unreasonably long and proposed an alternative timeline. By contrast, in its response BILD urged the Court to adopt defendants' proposed timeline.

By its Order dated July 1, 2002, the Court declined to adopt either CBD's or

BILD/defendants's proposed timelines on remand. Instead, the Court set a reasonable schedule for the determinations, with all dates one year earlier than those sought by defendants and BILD, and about one year later than those sought by CBD. Additionally, the Court ordered that determinations proceed more slowly than the dates proposed by CBD. In so ruling, the Court cited BILD's brief once for the proposition that "critical habitat designations prepared in accordance with unreasonably short court-imposed timelines are vulnerable to legal challenge." (*See* July 1, 2002 Order at 11:18–20).

On September 19, 2002, CBD and defendants stipulated to a payment of $23,500 in attorneys' fees.[1] On November 19, 2002, BILD filed a timely motion for their attorneys' fees. Following a series of stipulated continuations of the hearing on the motion, defendants filed an opposition on January 27, 2003. In their opposition, defendants contested BILD's standing. BILD then filed a reply on February 3, 2003. Because the reply raised new contentions regarding BILD's standing, the Court granted defendants leave on February 6, 2003 to file a sur-reply addressing those issues. The Court now turns to the merits of the motion.

## DISCUSSION

### I. Standing

Defendants argue for the first time to this Court in their opposition to BILD's motion for attorneys' fees that BILD lacks standing to bring this action. (*See* Defs' Opp'n at 5 *et seq.*). While BILD appears to concede that defendants may raise standing as a jurisdictional bar at this point in the litigation, BILD argues that it does indeed have both traditional and procedural standing. (*See* Reply at 2:15–22).

### A. Traditional Standing

Because standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," the Court does not have jurisdiction in its absence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The "irreducible constitutional minimum" of standing contains three elements. *Id.* First, the plaintiff must have suffered an "injury in fact." *Id.* The Supreme Court's opinions have defined such an injury as "an invasion of a legally protected interest which is (a) concrete and particularized ... and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotations omitted). Second, the injury must be fairly traceable to the challenged action of the defendants. *See id.* Third, it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561, 112 S.Ct. 2130 (internal quotations omitted). Each of these elements must be supported by the plaintiff with the same manner and degree of evidence required to show any other matter at the present stage of the litigation. *Id.*

With regard to the "imminence" of the injury in fact, the plaintiff must show that the injury is "*certainly* impending." *Id.* at 564, n. 2, 112 S.Ct. 2130 (emphasis in original). The goal is to avoid conferring standing on a party on which no injury would have occurred at all in the absence of judicial action. *Id.* In the end analysis, the Court warns that standing "is not 'an ingenious academic exercise in the conceivable.'" *Id.* at 566, 112 S.Ct. 2130 (citing *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 688, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973)).

---

1. The stipulation expressly precludes the stipulation from being used as precedent in future attorneys' fees litigation. (*See* Sept. 19, 2002 Order at 2).

The requirement that the injury is particularized means that "[t]he plaintiff must have a personal stake in the outcome." *Id.* at 583, 112 S.Ct. 2130. To be concrete, the injury must be more than "abstract." *Id.* Rather, the BILD must demonstrate that it has "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." *Id.* (internal quotation omitted).

## B. Procedural Standing

In *Lujan v. Defenders of Wildlife,* the Court recognized that its analysis would differ if it was faced with a case in which "plaintiffs are seeking to enforce a procedural requirement the disregard of which could impair a separate concrete interest of theirs (*e.g.,* ... the procedural requirement for an environmental impact statement before a federal facility is constructed next door to them)." *Id.* at 572, 112 S.Ct. 2130. Although the Court rejected the argument that the injury-in-fact requirement is satisfied by "congressional conferral upon *all* persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law," *id.* (emphasis in original), it also recognized that "procedural rights" are special and should be accorded different treatment under the standing analysis:

> The person who has been accorded a procedural right to protect his concrete interests can assert that right *without meeting all the normal standards for redressability and immediacy.* Thus, under our case law, one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the

> dam will not be completed for many years.

*Id.* at 572, n. 7, 112 S.Ct. 2130 (emphasis added). The *Lujan* Court explained that the case before it differed from its hypothetical case because the *Lujan* plaintiffs sought procedural standing for persons who had no concrete interests affected. *Id.* In terms of the Court's hypothetical, these would be people who live on the other side of the country from where the proposed dam would be built. *Id.* In sum, the Court held that an individual can enforce procedural rights "so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing." *Id.* at 573, 112 S.Ct. 2130.

The Ninth Circuit has determined that the *Lujan* case requires a plaintiff to show two essential elements for procedural standing: "(1) that he or she is a person who has been accorded a procedural right to protect [his or her] concrete interests ... and (2) that the plaintiff has some threatened concrete interest ... that is the ultimate basis of [his or her] standing." *Douglas County v. Babbitt,* 48 F.3d 1495, 1500 (9th Cir.1995) (internal citations omitted). Additionally, "plaintiffs must show that their interest falls within the 'zone of interests' that the challenged statute is designed to protect." *Id.* at 1500–01.

The Ninth Circuit has found in several cases that a procedural injury can form the basis for standing. *See, e.g. Pacific Northwest Generating Coop. v. Brown,* 25 F.3d 1443, 1450 (9th Cir.1994) (plaintiffs with an economic interest in preserving salmon have procedural interest in ensuring that the ESA is followed); *Friends of the Earth v. United States Navy,* 841 F.2d 927, 931–32 (9th Cir.1988) (residents who live near site of proposed port have procedural standing to sue for Navy's alleged failure to follow permitting regulations); *State of*

*California v. Block,* 690 F.2d 753, 776 (9th Cir.1982) (state of California has procedural standing to challenge the adequacy of an EIS for forest service's land allocation); *City of Davis v. Coleman,* 521 F.2d 661, 671 (9th Cir.1975) (city located near proposed freeway interchange has procedural standing to challenge agency's failure to prepare an EIS).

### C. Application to the Present Case

The common threshold requirement in both the traditional and procedural standing analyses is that the plaintiff must demonstrate a concrete, particularized interest related to the challenged action or inaction. BILD argues that it suffered direct harm from defendants' "failure to make proper critical habitat determinations." (*See* Reply at 3:24–25). Thus, BILD argues that defendants' issuance of "not prudent" determinations have caused its members to suffer uncertainty concerning the regulation of their property. (*See id.* at 4:11, 18). Additionally, BILD argues that defendants' failure to issue "legally-supportable" critical habitat determinations causes its members to suffer injury from an "informational void" concerning what property they can develop. (*Id.* at 4:24–26; 5:15–16). Finally, BILD argues that it has "environmental interests that are furthered by proper administration of the ESA's critical habitat requirements." (*Id.* at 6:3–4).

■ As discussed above, the traditional standing analysis requires an injury-in-fact. The Court goes on to define this as the violation of a legally protected interest that is concrete, particularized, and actual. The Court finds that BILD's asserted interest in regulatory certainty regarding the use of their properties is simply not one for which the law provides protection. Within the limits of the Fifth Amendment, the state may regulate the use of private property and may alter the scope and substance of those regulations in the future. The Court is not aware of any law holding that absolute certainty concerning the future regulation of property is a legally protected interest, and BILD has not provided the Court with any authority so stating. Thus, BILD's asserted injuries related to certainty do not meet the traditional standing requirements for an injury-in-fact.

■ However, BILD also argues that it has a legally protected interest in the proper administration of the ESA.[2] While such a generalized interest would not suffice to provide standing, BILD has a particular interest based on the declaration of Leonard Frank, who is Senior Vice President at Pardee Construction Company ("Pardee"). (*See* Decl. of Leonard Frank at ¶ 1). Pardee is a member of BILD's parent organization, Building Industry Association of Southern California ("BIA/SC"). (*Id.* at ¶ 2). Frank declares that included within Pardee's holdings is raw land that supports three of the species at question in this litigation. (*Id.* at ¶ 3). The injury asserted (in the proper administration of the ESA with regard to Pardee's land) became an "actual" one when the FWS issued its allegedly improper "not prudent" determination. Thus, the Court finds that under either a traditional or procedural standing analysis, this last argument suggests a particularized, concrete

---

2. The legal recognition and protection of this interest derives from the citizen suit provision of the ESA, which provides that any person may sue to enforce the provisions and regulations of the ESA. *See* 16 U.S.C. § 1540(g)(1). Defendants argue that a "statutory right to sue . . . is not a procedural right." (*See* Sur-

Reply at 4:4–5). However, the Ninth Circuit has interpreted the *Lujan* Court as finding that the ESA's citizen suit provision grants a "procedural right to ensure that statutory procedures are followed correctly." *Douglas County,* 48 F.3d at 1500, n. 4.

injury and interest. *See Churchill County v. Babbitt*, 150 F.3d 1072, 1078 (9th Cir. 1998) ("A plaintiff can establish the requisite threatened concrete interest for standing in cases . . . where the plaintiff has the procedural right to protect its interest in land management by showing that it owns or manages land threatened by the challenged action or omission.").

Proceeding under the procedural standing framework, it is thus clear that BILD has both a concrete interest in the critical habitat designation process and a procedural right under the ESA. Under Ninth Circuit precedent, they must only otherwise meet the prudential requirement that their interest falls within the "zone of interests" that the ESA is designed to protect. To be clear: The interest upon which the Court proceeds is *not* plaintiff's uncertainty regarding the regulation of their land, but rather BILD's interest in the proper administration of the ESA with respect to its member's particular property. By its very structure and language, the ESA seeks to protect this very interest. It does so by creating private attorneys general to stand watch over the application of the ESA provisions and regulations, and by allowing aggrieved citizens to seek injunctions to compel the Secretary to lawfully fulfill her responsibilities under the ESA.

Whether BILD's more narrow reason for promoting the proper administration of the ESA is to gain certainty for its member's economic investments, to promote the responsible regulation of the environment, or both, is a question that the Court need not reach. It is enough for purposes of standing that BILD has a particularized, concrete interest in the proper implementation of the ESA.[3] Defendants appear to concede this point when they expressly state that they are not contesting BILD's prudential standing. (*See* Defs' Opp'n at 12, n. 9).

Once a plaintiff seeking procedural standing establishes a concrete interest in the challenged action, the Ninth Circuit has only required the plaintiff to further establish a "reasonable probability" that the challenged action would threaten its concrete interest. *Churchill County*, 150 F.3d at 1078. Here, BILD met that burden when it alleged in its complaint that the "not prudent" critical habitat designations were not supported in a legally sufficient way. (*See* Compl. at ¶ 5, 18–21).

Because the Court holds that BILD had procedural standing to seek review of the decision by the Secretary to issue the underlying "not prudent" critical habitat designations, the Court now turns to the merits of the motion.

## II. Attorneys' Fees under the ESA

### A. Legal Standard

Although BILD brought claims under both the ESA and the Administrative Procedure Act ("APA"), defendants do not contest that these claims are interrelated. (*See* Defs' Opp'n at 14). Because the Court agrees with defendants' analysis suggesting that the ESA fees provision takes precedence over the Equal Access to Justice Act provision that provides for the award of fees under the APA, the Court will analyze the current motion under the ESA fee provision. (*See id.*).

 The ESA provides that "[t]he court, in issuing any final order in any suit brought pursuant [to the citizen's suit pro-

---

**3.** Defendants argue that BILD cannot have organizational standing because the interest it seeks to protect is not germane to BILD's purpose. (*See* Defs' Opp'n at 13:3–13). The Court does not agree. It is clear from the briefing and declarations submitted by BILD that ensuring the proper implementation of the ESA is germane to BILD's goal of responsible environmental regulation.

vision of the ESA], may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). The Supreme Court· has interpreted the language in the final clause of this provision as meaning that a party must have had some degree of success on the merits. *See Ruckelshaus v. Sierra Club,* 463 U.S. 680, 682, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983). Additionally, the Ninth Circuit has held that fees should be awarded under the ESA when a plaintiff has substantially contributed to the goals of the statute. *See Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior,* 748 F.2d 523, 526 (9th Cir.1984).[4] The "dominant consideration is whether litigation by the party has served the public interest by assisting the interpretation or implementation" of the ESA. *Id.* at 525 (citing *Alabama Power Company v. Gorsuch,* 672 F.2d 1, 3 (D.C.Cir.1982)).

### B. Application

BILD argues in the present case that it has both achieved some success on the merits and substantially contributed to the goals of the statute through its suit. First, BILD argues that it compelled defendants to withdraw their "not prudent" designations and to issue new determinations based on proper findings and analyses. (*See* Pla's Mem. P & A at 6). Second, BILD argues that it assisted the Court in navigating the relatively uncharted waters of the extent of the Court's discretion in providing a timetable for the Secretary's decisions on remand. (*See id.*).

With regard to BILD's first argument, defendants respond in three ways. First, they argue that FWS agreed to reconsider the critical habitat determinations without making any admissions of fact or law, and without a finding of a statutory violation. (*See* Defs' Opp'n at 15). Second, defendants argue that to the extent any lawsuit compelled them to reconsider, it was the one brought by the environmental plaintiffs, and not the one brought by BILD. (*Id.*). Third, defendants refer to their threshold argument that BILD does not have standing. (*Id.*). The Court has already dispensed with the last argument in the discussion above. With regard to the first argument, the ESA attorneys' fees provision does not require BILD to be a "prevailing party," although *Ruckelshaus* makes clear that BILD must have had some success on the merits. BILD was a party to the early neutral evaluation conference during which the parties ultimately agreed to stipulate to a voluntary remand of the determinations to the FWS. BILD's complaint and argument in the case was that the FWS had not supported its determinations in a legally supportable way. Accordingly, the Court finds that the FWS' action in reconsidering the designations, even if not accompanied by an express admission of liability, provided adequate relief to BILD for this Court to find that BILD had some success in its case. Certainly, in the absence of the actions brought by BILD and CBD, the Court may presume that the FWS would have let the designations stand, otherwise the FWS would not have issued the designations in the first place.

That, then, brings the Court to the second contention that the CBD suit, and not the suit by BILD, prompted the stipulation to reconsider. Both suits sought to compel the FWS to reconsider its not prudent designations. Both plaintiffs partici-

---

4. Although the Ninth Circuit has adopted a higher standard with regard to defendants in ESA cases, the standard by which to judge a plaintiff's motion for attorneys fees remains unchanged. *See Environmental Protection Information Center v. Pacific Lumber Co.,* 229 F.Supp.2d 993, 998 n. 3 (N.D.Cal.2002).

pated in the conference that resulted in the stipulation to reconsider. Defendants argue that they decided to reconsider their October 1998 "not prudent" determinations based solely on the Ninth Circuit decision in *Natural Resources Defense Council v. U.S. Department of the Interior*, 113 F.3d 1121 (1997). (*See* Decl. of Gray Frazer ISO Sur–Reply at ¶ 5). However, the Court does not find this assertion credible for the simple fact that the *NRDC* case was decided on May 21, 1997. Defendants had notice of that case before they even issued their determinations in this case, and far before either the CBD or BILD decided to bring suit. It is clear to the Court that to the extent the *NRDC* decision played a role in defendants' decision to stipulate to a remand of the determinations, it did so only in combination with the advocacy of CBD and BILD in the present case. Other than defendants' counsel's bare declaration that the BILD case played no role in defendants' decision to stipulate to a reconsideration,[5] the Court has no other extrinsic evidence before it to suggest that BILD's suit did not play a role in defendant's decision to reconsider. Accordingly, the Court declines to adopt defendants' argument.

Having found that BILD may be regarded as having had some success in its case against defendants, the Court must then also consider whether BILD has substantially contributed to the goals of the ESA. BILD argues that its "lead argument" in this litigation concerned the degree of the Court's discretion to provide defendants with reasonable time to reconsider the designation. (*See* Defs' Mem. P

& A at 6). BILD further argues that since this question "was not well defined by either the statute or case law," its arguments to the Court aided the interpretation of the ESA, and thus substantially contributed to the goals of the statute. (*See id.*). Defendants respond that they have in fact made the same arguments that BILD made in the present case many times to federal courts. (*See* Defs' Opp'n at 15). Furthermore, defendants argue that, based on the briefs cited in the Order issued by the Court setting the timetable on remand, BILD's arguments played only a minor role in the Court's decision. (*See id.*).

A close inspection of the arguments submitted by BILD and defendants reveals that they are substantially the same. Both parties argued that defendants did not violate a mandatory, nondiscretionary duty under the ESA, but rather acted arbitrarily under the APA. (*Compare* BILD Brf. Re: Timeline ("BILD TML BRF") at 3 *et seq. with* Defs' Reply to CBD's Proposed Timeline ("Defs' TML Reply") at 2). Both parties argued, therefore, that the Court had equitable powers under a "rule of reason" to set a timeline. (*Compare* BILD TML BRF at 6 *et seq. with* Defs' TML Reply at 3 *et seq.*). Both argued that defendants' proposed timeline is reasonable based on the difficulty and sheer number of analyses that must be performed to support a valid critical habitat designation. (*Compare* BILD TML BRF at 9 *et seq. with* Defs' TML Reply at 9:9–12). Finally, both argued that CBD's proposed schedule would likely lead to more litigation. (*Compare* BILD TML BRF at

---

5. (*See* Frazer Decl. at ¶ 6). Frazer states that the Service was not prompted in any way to consider BILD's lawsuit because it did not believe that BILD had standing. This, however, is different from a situation in which BILD did not, in fact, have standing. Had defendants successfully challenged BILD's standing to bring suit, and then BILD had brought a motion for attorneys' fees, defendants' position would be justified. The Court is hard pressed, however, to give much weight to an assertion that suggests defendants completely ignored BILD's suit in considering a resolution to the consolidated suit, especially when BILD had significant (and ultimately sufficient) arguments for standing.

12 *et seq. with* Defs' TML Reply at 10 *and* Defs' TML BRF at 10:18–19).

While the Court acknowledges that BILD's arguments on these matters were not identical to those made by defendants, that BILD's arguments may have even been more persuasively presented, and that BILD's briefs included other, incidental arguments not explicitly made by defendants, the Court does not find that this case presents the kind of situation that compels a departure from the traditional rule of each party bearing its own expenses. While BILD's arguments certainly were of assistance to the Court, these arguments were made in substantially the same way by defendants, and they did not lead the Court to a novel or markedly different interpretation or implementation of the ESA than it would have reached in their absence. Accordingly, the Court finds that it is not appropriate to award BILD attorneys' fees in this case.

## CONCLUSION

For the foregoing reasons, the Court DENIES BILD's motion for attorneys' fees. IT IS SO ORDERED.